(No. 25065.—

THE CARTER OIL COMPANY, Appellant, *vs.* J. B. LIGGETT *et al.* Appellees.

*Opinion filed April 17, 1939—Rehearing denied June 13, 1939.*

SHAW, C.J., dissenting.

WALTER DAVISON, and CRAIG & CRAIG, (L. G. OWEN, of counsel,) for appellant.

HARRY I. HANNAH, THOMAS R. FIGENBAUM, and J. G. BURNSIDE, (ROGER FRUIN, of counsel,) for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

The trustees of schools of township 8 north, range 3 east, Fayette county, on June 14, 1937, leased to the Carter

Oil Company a school house site in Fayette county containing about one-half an acre, for oil and gas purposes. On April 4, 1938, the lease was amended by correcting the description. Both leases were duly recorded. The site in question was conveyed in 1890 by Eli Dial and wife to the school directors of district No. 5, township 8 north, range 3 east, for a purported consideration of $2 for school purposes, with a reversion to the grantors when the site was no longer used for school purposes. On July 23, 1938, the school directors of said district, in consideration of $1000, leased the same land to appellees for oil and gas. Appellees entered and drilled to a depth of 900 feet, when they were stopped by a temporary injunction at the suit of the appellant, the Carter Oil Company. Upon a trial, the temporary injunction was dissolved and the bill dismissed for want of equity. The principal question involved is whether the trustees of schools or the school directors of the district have the right and power to make the lease in question. The validity of the respective oil leases being the issue, a freehold is involved. (*Ohio Oil Co.* v. *Daughetee,* 240 Ill. 361.) Appellees further urge that, in no event, is appellant entitled to relief in equity.

An examination and study of the School law is necessary, as no case is cited directly deciding the principal point involved. Section 16 in every congressional township is reserved for school purposes, by act of Congress. A general statute on schools, in pursuance of the constitution, was enacted by the legislature of Illinois in 1857, and again in 1889. Most of these statutes are still in effect, although some separate enactments of recent date have a bearing on the situation. The original plan seems to have contemplated that the property of the schools should be held and managed by trustees, designated as a corporation, with perpetual succession, and the education afforded in the free schools, supervised by directors who had power

to hire teachers, levy taxes, prescribe studies and establish rules for the conduct of schools.

Both the trustees of schools and the school directors were required to make reports to a county superintendent of schools, and, to a certain extent, were subject to his control. Over all was a State Superintendent of Public Instruction. The unit was a school district, comprising territory having a population of 1000, or less. Provision was made, later, for boards of education in cities having a certain population, in place of directors. Looking at one or two isolated sections the division of authority between trustees of schools and school directors may seem obscure, but if all the several provisions are examined in light of the construction placed upon them a general, logical scheme is discerned.

At first the principal source of school funds was the school lands donated by Congress. To produce revenue for school purposes they had to be sold or leased. A school township was a congressional township of 36 sections, so the law provided that trustees be elected in each township. A township might have enough population to require one or many schools, so provision was made for directors to look after the affairs of each school district. But the township money was for the use of all districts in it, and had to be divided among them, and, hence, provision was made to do the many things necessary to handle the school property and conduct schools, through two corporate bodies elected by the people of the township and district, respectively, and the distinction between their powers and duties, with slight variations, has been since maintained in this State.

To make the lease involved in this suit, requires that the proper school corporation shall not only own the land, but also have the power to convey the same to the grantee. It is conceded the land in question is a school site, and a

school has been maintained thereon for fifty years. Before discussing the cases cited, a general resume of powers and duties of trustees of schools and school directors, as set out in the statute, would be appropriate.

First, as to the trustees of schools: "The school business of all school townships shall be transacted by three trustees. * * * Such trustees shall be a body politic and corporate, by the name of 'trustees of schools of township No. —.' * * * Such corporation shall have perpetual existence, with power to sue and be sued, and to plead and be impleaded, in all courts and places where judicial proceedings are had." (Ill. Rev. Stat. 1937, chap. 122, par. 20.) They shall ascertain the amount of funds subject to distribution, and appropriate and distribute same as provided by law and among the school districts. (par. 35.) The trustees may receive gifts, grants, donations or devises for the use of any school or library, or for any other school purpose. They shall be and are hereby invested in their corporate capacity with the title of all *school buildings* and *school sites*. (par. 39.) They may purchase real estate in satisfaction of any judgment in an action in which they are parties, (par. 42,) and make settlement, and take deeds to real estate in settlement, with persons indebted to them (par. 43) and sell or lease land thus obtained. (par. 44.) When required for road purposes the trustees, with the consent of the school directors, may sell and convey school sites or school lands to the State, county or road district. (par. 44(1).) The trustees may change the boundaries of school districts by dividing, consolidating or detaching, upon proper petitions. (par. 46.) In like manner they may create new districts (par. 46) and make distributions to such new districts of tax funds or other funds. (par. 64.) They elect the township treasurer, (par. 67), and designate the bank in which the treasurer may deposit money. (par. 71.) Mortgages to secure payment of

school funds loaned are made to the trustees, suits for same are brought in their names, and mortgages, notes and securities are made payable to them. (par. 76.) The treasurer makes a report of the fiscal affairs of the township and the school district to the trustees. (par. 79.) The trustees may lease the school land, donated by the government (par. 242) and dedicate parts thereof for street or highway purposes if they believe the benefit derived therefrom will compensate for the strip dedicated. (par. 260.) The trustees, by proper writing shall declare title to a school site is held for joint use of a school district, when they have agreed upon joint use of any school site, (par. 344a,) and when the school directors of one school have agreed with another district for the sale of a school site, the trustees shall, in writing, transfer the use of such site to the purchasing district, (par. 344b,) and where a school district agrees with a high school district for the joint use of school property, real or personal, the agreement is only valid upon receiving the written consent of the trustees.

The foregoing are the principal statutory enactments relating to the powers and duties of school trustees up to 1937, when section 219 of the School law (par. 242) was amended by granting school trustees, in addition to power to lease school lands and lands acquired by compromise or settlement, the authority to lease school real estate to which they hold title, for drilling for oil or gas, whether said lands are being used for school purposes or not, and the amendment validates all such leases theretofore executed. Laws of 1937, p. 1089.

Now, as to the school directors: In districts of 1000 population or less, and not governed by a special act, there shall be elected a board of school directors of three members. (Ill. Rev. Stat. 1937, chap. 122, par. 111.) They shall be a body politic by the name of "School Directors of District No. ——, County of ————, and State of

Illinois." (par. 112.) Their duties are enumerated in paragraph 122, including raising revenue, hiring teachers and maintaining schools. There is no duty specified as to school houses, except keeping fences around school grounds in good repair. By paragraph 123 the powers of school directors are enumerated, and by sub-paragraph 10 they have control and supervision of all school houses, and, when not occupied by schools, may grant the temporary use of them for religious meetings, literary societies, lectures, concerts and recreational and social activities, etc. The foregoing, with minute provisions for supervision and control of schools, are the principal provisions as to school directors until 1917, when two laws were enacted giving school directors power to (a) acquire by gift, donation, devise, purchase, or otherwise, real estate for the purpose of play grounds, athletic fields, etc., and equip the same, the cost to be paid from building fund; (Ill. Rev. Stat. 1937, chap. 122, par. 339;) (b) to take title to real estate or personal property given or devised, when the deed or will declares that such property shall be held, managed, improved and invested, or disposed of for the *benefit of the public schools of such district,* and such directors may hold, manage, improve, invest or dispose of such property so as to carry into effect the intention of the donor of the grant or devise, as expressed in the instrument by which same was made. (Ill. Rev. Stat. 1937, chap. 122, par. 347.) The last two provisions are the only ones in the statute which give school directors power to hold or convey real estate, and that power only to carry into effect the terms of the gift or grant. From the statute we ascertain that the trustees of schools hold title to all school buildings and school sites, and lands obtained by decree or settlement of loans of the school funds, and may convey the same under the several conditions set out above. The school directors were not granted the power to either hold or convey any such property.

It is claimed by appellees that the trustees of schools, under the statute, were only invested with title to lands derived from investment of funds coming from sale of common school lands, and that, if the deed or grant of a school site was to the school directors of a district as grantee, no title vested in the trustees and that the school directors were competent to acquire and convey title to the same; and, further, that the language of the deed to the school directors brought it within the provisions of the act of 1917. (Ill. Rev. Stat. 1937, chap. 122, par. 347.) The deed was made and delivered in 1890, and whatever effect it may have would be governed by the law as it then existed.

Different parts of the School act have frequently been before this court. It has been held the trustees of schools are the proper plaintiff to acquire school sites by eminent domain; (*Schuler* v. *Wilson*, 322 Ill. 503; *Trustees of Schools* v. *McMahon*, 265 id. 83;) that they are vested with power to hold title to school property but not to manage it; (*People* v. *Dupuyt*, 71 Ill. 651;) that they are the proper plaintiff to bring a suit for unpaid taxes. (*Tappan* v. *People*, 67 Ill. 339.) Ejectment to recover school lands must be brought by the trustees. (*Brown* v. *Trustees of Schools*, 224 Ill. 184; *Moore* v. *School Trustees*, 19 id. 83.) In Chicago, where the city has powers and duties comparable to trustees of schools, this court decided the title to school property is in the city and not in the board of education. (*People* v. *Roche*, 124 Ill. 9.) On the other hand, it has been held the board of school directors cannot exercise any power except in the manner provided by statute; (*Wells* v. *People*, 71 Ill. 532; *Peers* v. *Board of Education*, 72 id. 508;) that they have no right to maintain a suit to reform a deed to a school house site, as that power rests in the school trustees, (*Wilson* v. *School Directors*, 81 Ill. 180;) that school directors may receive a gift of land for school purposes and purchase grounds for play-

ground uses, (*Reiger* v. *Board of Education*, 287 Ill. 590,) and may grant the use of a school house in accordance with the statute. *Lagow* v. *Hill*, 238 Ill. 428.

The general rule is laid down in a number of cases that the trustees of schools are invested with the title of school houses and school sites and the school directors with the control and supervision of schools. *Brown* v. *Trustees, supra; Trustees of Schools* v. *Griffith*, 263 Ill. 550; *Schuler* v. *Wilson, supra; Banks* v. *School Directors*, 194 Ill. 247.

The cases called to our attention involving conveyances to school directors do not modify this rule. *O'Donnell* v. *Robson*, 239 Ill. 634, involved a controversy between an oil lessee of a school site and the grantor of the school directors, with a reversion clause. The claim was made that taking oil from the land amounted to waste. No question of the power of the school directors to hold title was involved, but the court commented that while, under the deed, the school directors held the legal title, yet, under the statute, it was for the use of the schools and the equitable title was in the trustees. In *Stowell* v. *Prentiss*, 323 Ill. 309, a deed was made to the directors of school district No. 1. There was an error in description and a bill to reform filed by the school directors. It was decided if the property conveyed was for a school purpose reformation might be decreed and the school directors would hold legal title, as trustee, for the trustees of schools. The facts, however, disclosed the purpose of the grant was for the public generally, making it necessary to appoint a trustee, as the school directors were incapable of holding for such purpose. *Trustees of Schools* v. *Petefish*, 181 Ill. 255, involved a gift by will "to the school in Arenzville," the income of which was to be expended by the "trustees or school directors" for certain religious purposes. The school directors assumed control and the trustees of schools filed a bill to set aside a lease made by them.

This case holds there was an intention to benefit the school district in which Arenzville was located, and that there was no intention disclosed of vesting title to *school* land in the school trustees or of giving them any control whatever, and that to enforce such a trust it was not necessary the title so vest. The case holds that lands given to a school district, not for school purposes, need not be given or placed in the name of trustees of schools. The trust would not be allowed to fail as a charitable use.

None of these cases decides an issue raised between the owners of conflicting grants of the same property made by the trustees of schools and the school directors. The property involved here is a school site and title rests in the trustees of schools both under the express language of the statute and by numerous decisions of this court. The fact that the deed was made to the school directors does not give them ownership, as the statute fixes title to school houses and school sites in the trustees of schools. It is transferred by statute, as is a title under the Statute of Uses. There is no provision anywhere in the statute authorizing school directors to convey or lease school property. The act of 1917, (par. 347, *supra,*) makes them capable of taking property under a will or deed where property is given a *school district,* which, as such, is not capable of holding real estate, but in such case they are but an agent to carry out the will of the testator or grantor. In the deed from Dial and wife the conveyance was not to the school district, but to the "directors of school district," a corporation under the statute. This act has no application for the further reason that the last section expressly prevents its operating on past transactions. It is clear the lease by the school directors to appellees was made without legal authority and had no effect whatever.

It should be noted that the statute of 1841, considered in *Trustees* v. *Petefish, supra,* did not, like the present law, say the trustees of schools in their corporate capacity are

vested with title to all school buildings and school sites. (par. 39, *supra.*) When the title to the school site in question became vested by operation of the statute, (par. 39, *supra,*) it is difficult to understand how it vested in the school directors under an act permitting them to hold title when a gift or grant was made to a school district, as a means of preventing the failure of a charitable gift.

However, before appellant is entitled to relief it must appear that the trustees of schools had the power to lease real property. The instrument executed was for the production of oil and gas, and, if discovered, entitles appellant to operate so long as oil or gas is produced. It conveys a freehold. (*Ohio Oil Co.* v. *Daughetee, supra.*) It is doubtful if the trustees of schools possessed the power to sell or lease school sites except upon petition and election under paragraphs 40 and 40a, *supra,* until the passage of the law of 1937, *supra.* This act extends the power, originally given, to rent on an annual basis unsold school land, and real estate to which the school trustees hold title, and gave them this added power: "The trustees of schools which have title to any school real estate, or lands whatsoever, whether said lands or real estate are now being used by any school district for school purposes or not, are hereby authorized and empowered to lease said real estate or lands * * * for drilling for oil and gas * * * provided that all leases heretofore executed by the trustees of schools for drilling for oil and gas are hereby validated."

The original lease made to appellant dated June 14, 1937, did not describe the tract involved, but, by an amendment duly authorized, the trustees corrected the description on April 4, 1938, and otherwise ratified the lease. The lease of appellees was made by the directors on July 23, 1938. Said instruments were all duly recorded in the office of the recorder of deeds. If any doubt ever existed as to the power of the trustees to lease a school site it was removed by this act, which also validated all such prior leases. It

gives authority to lease all lands to which the trustees of schools have title, and includes unsold portions of section 16, or lands in lieu thereof, title to which must be passed by patent from the State. (par. 258, *supra.*) The statute places the title to school house sites in the trustees. (par. 39, *supra.*) It is conceded this is a school site. The lease to appellant was not only valid, but first in point of time, and expressly authorized by the act of 1937.

Appellees claim that a suit for injunction will not lie because appellant has an adequate remedy at law by ejectment, or a suit for damages. It is said this point was not raised in the circuit court, but whether it was or not, it has been determined that ejectment will not lie in such a case. (*Watford Oil and Gas Co.* v. *Shipman,* 233 Ill. 9; *Gillespie* v. *Fulton Oil and Gas Co.* 236 id. 188.) In such cases of threatened waste and irreparable injury injunction is a proper remedy. (*Ohio Oil Co.* v. *Daughetee, supra; Gillespie* v. *Fulton Oil and Gas Co. supra.*) We have no doubt, where it is admitted drilling operations have proceeded to a depth of 900 feet on a tract containing less than an acre, injunction is a proper remedy to be invoked by appellant. It is to be borne in mind that the controversy here is between the respective grantees of the trustees of schools and the school directors, and their rights, alone, are determined herein.

The judgment of the circuit court of Fayette county is reversed and the cause is remanded, with directions to enter a permanent injunction, as prayed.

*Reversed and remanded, with directions.*

Mr. CHIEF JUSTICE SHAW, dissenting.