(No. 30868.—■■■■■■)

MARTIN JACOBSON *et al.*, Appellants, *vs.* THE VILLAGE OF WILMETTE *et al.*, Appellees.

*Opinion filed March 24, 1949—Rehearing denied May 11, 1949.*

WISCH, CRANE & COTTER, of Chicago, (MYRON E. WISCH, and BENJAMIN B. CRANE, of counsel,) for appellants.

WILLIAM M. JAMES, and HINSHAW & CULBERTSON, (JOSEPH H. HINSHAW, and OSWELL G. TREADWAY, of counsel,) all of Chicago, for appellees.

Mr. JUSTICE SIMPSON delivered the opinion of the court:

This appeal seeks to reverse a decree entered by the superior court of Cook County in favor of appellees. Appellants, Martin Jacobson and Minnie H. Jacobson, his wife, filed a complaint October 4, 1941, against appellees, the village of Wilmette and its officers, seeking to restrain them from enforcing a zoning ordinance against appellants and their property. After a hearing before a master and the court, their complaint, as amended, was dismissed for want of equity. The trial court certified that the validity of a municipal ordinance is involved and the public interest requires that the cause on appeal should be taken directly to this court.

In June, 1928, appellants purchased the property in question known as 618 Washington Avenue in the village of Wilmette, Cook County, and have occupied it as a residence since that time. The house is of wooden con-

struction and was used as a single-family dwelling until 1938 when it was remodeled and made into a multiple-family dwelling.

By zoning ordinance No. 1281, effective March 3, 1922, the village of Wilmette created an "A" residence district in which all buildings and premises, except as otherwise provided in the ordinance should be erected for, and used exclusively as, single-family dwellings (and other uses not here in question.) Appellants' residence came within the provisions applicable to that district. By ordinance No. 1772, effective May 9, 1935, the village amended its ordinance No. 1281 and again provided for single-family dwelling districts. Thereafter, on February 18, 1941, ordinance No. 1882 was passed by the village which again amended its original ordinance and provided for single-family districts "X" and "Y." The property in question under each of the said ordinances was within the territory designated as a single-family dwelling district, being within the "X" district of the last ordinance, and each ordinance has in substance the same effect upon it.

July 27, 1938, Martin Jacobson, through his agent, made application to the village for permission to "enclose side porch, add breakfast nook and flower room to rear porch" of the premises at an estimated cost of $300 and was granted a permit so to do. In making the improvements Jacobson went beyond the permission sought and granted, and constructed concrete foundations under the porches, enclosed the three porches, made additional rooms on the first floor, changed the entrance to the house, constructed concrete flooring, plastered the walls of the new rooms, put in hardwood floors, converted a part of the first floor into a kitchen and installed steel cabinets and a double kitchen sink therein. The old kitchen was torn away and a bedroom was made out of it and a bathtub was installed. On the second floor the sleeping porch was made into a dining room and a kitchen, oak flooring was put in, the

walls plastered, a double sink installed and the stairway remodeled. On the third floor a big attic space was made into a kitchen with dining nook and pantry with cabinets and shelves. The improvements cost approximately $2500 and when completed in December, 1938, the building had been changed from a single-family dwelling to a multiple-family dwelling. The third floor was rented for $50 a month and the second floor for $85 a month. The exterior of the building did not indicate the changes in the construction as above mentioned.

September 10, 1941, appellant Martin Jacobson was charged with violating the zoning ordinances of said village and upon trial was found guilty and a fine with costs was assessed against him from which no appeal was prosecuted. Thereafter this suit was filed through which he seeks also to prevent enforcement of that judgment.

Appellants contend the zoning ordinance as applied to their property constitutes an unreasonable exercise of the police power of the village and that the ordinances are discriminatory, arbitrary, void and confiscatory. They also claim that they had no knowledge of the adoption of ordinance No. 1772. With reference to the latter ordinance they say it was referred on March 12, 1935, to a zoning committee for consideration and for a public hearing concerning it; that the committee continued the public hearing held on April 5, 1935, to April 12, 1935, and then to April 23 of the same year, when it adjourned "sine die;" that on April 18, 1935, the committee published a notice stating that another public hearing on said proposed ordinance would be held at the village hall on Friday evening, April 26 at 8 o'clock; that no meeting was held pursuant to that notice or on any day subsequent thereto and that the ordinance was adopted by the board of trustees on April 30, 1935.

The record establishes that the zoning committee on March 21, 1935, published an official notice of public hear-

ing as to said ordinance to be held April 5, 1935, and the notice stated that the meeting may be adjourned from time to time. It was adjourned to April 23 and not to April 26. The item which appellants relied upon in the newspaper appears to be merely a news item. The ordinance was passed by the board of trustees at a regular adjourned meeting on April 30, 1935, and is valid and binding upon appellants so far as the matter of notice is concerned.

Appellants argue that the ordinances as applied to their property are invalid in that they are unreasonable, arbitrary, void and confiscatory and deprive them of the lawful use of their property, contrary to the constitution of the State of Illinois and the constitution of the United States and are particularly contrary to, and in violation of, the fourteenth amendment of the United States constitution, in that there is an unreasonable exercise of the police power. They say that a considerable part of the village is included within the single-family dwelling area, and that numerous properties are used and occupied in said area as two-family or multiple-family dwellings and a number of dwellings in the area are used for income purposes and to accommodate roomers. Specifically do appellants point to a tract within the immediate proximity of their property where these conditions are alleged to exist, the particular area being bounded on the east by Fifth Street, on the west by Tenth Street, on the south by Greenleaf Avenue and on the north by Forest Avenue in said village. This area comprises eighteen city blocks with approximately 250 residences and appellants' property is near the center of the tract. There is also a public school, a woman's club, and a church bordering and within this area, all permitted by the ordinance. All of this area is zoned for single-family dwellings under each of the zoning ordinances. The average age of the single-family dwellings in the area is from 35 to 40 years.

Appellants claim that since ordinance No. 1281 was adopted the character of the "A" residence district has

changed and now consists of multiple-family dwellings and rooming houses as well as single-family dwellings. They also say that in said district there are permitted boarding and lodging houses, farming and truck gardening, churches, schools, village hall, passenger station and private clubs; that because these other uses are permitted it is unreasonable to limit dwellings to the single-family type.

It was stipulated concerning properties within the above bounded area as follows: that 802 Lake Avenue is used as a two-family dwelling; 816 Lake Avenue is occupied as a residence and at times rooms were rented to two people; 913 Central Avenue was used as a two-family residence by osteopaths who had placed thereon a wooden sign 8" by 14" in size; 702 Washington Avenue on the date of the suit was used as a two-family dwelling but thereafter changed to a single-family dwelling with one room rented to one person; 617 Washington Avenue was used as a two-family dwelling; 723 Central Avenue was used as a three-family dwelling; at 730 Central Avenue the first and second floors were used by the owner who rented a room to two persons who had the privilege of occasionally preparing their own breakfast in their room but had no sink facilities and took other meals out, the third floor being rented to two persons and having a separate housekeeping unit; and 723 Eighth Street was used as a two-family dwelling.

The evidence, however, which explained the use of the properties covered by the above stipulation shows that the property at 802 Lake Avenue had been used as a two-family dwelling since 1921 and constitutes a nonconforming use; 816 Lake Avenue is used as a single-family dwelling; 913 Central Avenue constitutes a nonconforming use; 702 Washington Avenue was used as a single-family dwelling until 1940 when the owners put in an apartment for their son on the second floor. The village took action against them in 1941 for violating the zoning ordinance; judg-

ment was entered against the owners and they then re-converted to a single-family dwelling renting one room to one person; 617 Washington Avenue has been used as a two-family dwelling for 25 years and constitutes a non-conforming use; 723 Central Avenue has been used as a multiple-family dwelling since 1915 and constitutes a non-conforming use; 730 Central Avenue has been occupied as a multiple-family dwelling since 1922 or 1923 and prob-ably constitutes a nonconforming use; 723 Eighth Street has been used as a two-family dwelling since 1919 and constitutes a nonconforming use.

A "nonconforming use" is defined by the ordinances to be a building or premises occupied by use that does not conform to the regulations of the use district in which it is situated. The ordinances provide, however, that the lawful use of a building or premises existing at the time of the adoption of the ordinance may be continued, although such use does not conform to the provisions thereof, and such use may be extended throughout the building or premises.

The village of Wilmette is one of the north shore suburbs of Chicago, lying between Evanston and Kenil-worth and has a population of a little over 17,000 com-posed largely of professional men, advertising men, busi-ness men, executives of manufacturing concerns, people who are employed in banks, schools and various types of business in town. A small percentage of the total popula-tion live in multiple-family dwellings and the village has a territory zoned for such dwellings. The only property in the village used for farming, trucking and nursery purposes is at the extreme western edge of the village, which is sparsely settled.

On Washington Avenue between Sixth and Seventh Streets there is but one house besides that of appellant, used for more than one family,—that is the residence at 617 Washington Avenue directly across the street from

appellant's property and it constitutes a nonconforming use, as it has been used as a two-family dwelling for twenty-five years.

The evidence shows that an illegal use of zoned property in the village would depreciate the value of other property therein to a greater extent than would the use of property therein as a nonconforming use. There is some conflict as to what effect a multiple-family use may have upon other properties in its immediate vicinity but the weight of the evidence shows that they would be adversely affected, the extent varying according to the distance from it. It was testified that a building converted into a multiple-family dwelling does not have the same fire resisting qualities as one originally constructed for that purpose; that a multiple-family use would increase the hazards of street traffic because of the presence of more people; would tend to spread infectious diseases and create epidemics; would tend to disturb the general peace and quiet; would increase the possibility of friction between families and children; would increase the danger of annoyance through rodents, insects and the like.

There is reliable testimony to the effect that the moment an illegal multiple-family dwelling is known to be maintained, the revenues to the village would begin to decrease; that loan companies endeavor to ascertain whether there are violations of the zoning ordinances before loaning money in the territory, and many of them will not make loans in territories where there are violations of the zoning ordinances; that where loans are made in such territories they are not as large as they otherwise would be; and that the average depreciation of single-family dwelling property in a territory where an illegal multiple-family dwelling exists would be from five per cent to fifteen per cent of its value, depending upon the nearness to such illegal dwelling. The average value of houses in the block where appellants' house is located is from $8500 to $12,000.

The property in question, before the change, was worth approximately $8500, and after the improvements was worth approximately $12,000. The use of this building as a multiple-family dwelling would depreciate the value of other properties in the neighborhood far more than it would add to the value of appellants' property and would diminish the tax revenue of the village.

It is claimed by appellants that the zoning ordinance of the village which permits three roomers in a single-family dwelling and restricts a multiple-family dwelling in the same territory is an invasion of their property rights and such ordinance bears no substantial relation to the public health, safety, morals and general welfare. The principal case upon which appellants rely is *Harmon* v. *City of Peoria,* 373 Ill. 594. In that case five of the eighteen houses in the block in which the property in question was located were actually used or adapted to use as two and three-family dwellings, three having been remodeled by converting into apartments and two of them having been changed before the zoning ordinance was adopted. In the same block there were at least six rooming houses, and occupants of four other houses were accustomed to renting rooms. In that case it affirmatively appeared that one half of the houses in the block had been used as two-family or multiple-family dwellings and rooming houses. The facts in that case are much different from those in the one before us. We there said: "In determining whether a particular ordinance is, in fact, in the interest of the public welfare, each case must be determined upon its peculiar facts."

In *Merrill* v. *City of Wheaton,* 356 Ill. 457, cited and relied upon by appellants there were eight residences besides plaintiff's used as two-family dwellings and eight others used as one-family residences in the same block, and it is unlike the present case. *Johnson* v. *Village of Villa Park,* 370 Ill. 272, also cited by appellants, has no similarity to

the present case. Another case cited by them is *Anderman* v. *City of Chicago,* 379 Ill. 236, which involved a small tract zoned for residential use, which tract was surrounded by property zoned for either commercial uses or for apartments and was near a busy street. The difference between that case and the present one is apparent.

The record clearly shows that a multiple-family dwelling in a neighborhood zoned for single-family dwellings in Wilmette is more detrimental to the neighborhood and to other property therein than is the permitting of three roomers in a single-family dwelling. Under the facts of this case we cannot hold that appellants' rights have been violated by the restriction imposed.

While cities and villages have statutory authority for the enactment of zoning ordinances, in the exercise of that right the restriction of the use of property must bear substantial relation to the public health, safety, morals or general welfare. (*Harmon* v. *City of Peoria,* 373 Ill. 594; *Forbes* v. *Hubbard,* 348 Ill. 166.) Where there is room for a legitimate difference of opinion concerning the reasonableness of a particular zoning ordinance, the finding of the legislative body will not be disturbed. (*Mercer Lumber Cos.* v. *Village of Glencoe,* 390 Ill. 138; *Burkholder* v. *City of Sterling,* 381 Ill. 564; *Avery* v. *Village of La Grange,* 381 Ill. 432.) The legislative judgment of the village council is conclusive unless it is shown to be arbitrary, capricious and unrelated to the public morals, safety and general welfare. (*Neef* v. *City of Springfield,* 380 Ill. 275; *Evanston Best & Co.* v. *Goodman,* 369 Ill. 207; *Speroni* v. *Board of Appeals,* 368 Ill. 568.) The presumption is in favor of the validity of a zoning ordinance adopted pursuant to legislative grant and it is incumbent upon the one attacking it to show its invalidity. *City of Springfield* v. *Vancil,* 398 Ill. 575; *DeBartolo* v. *Village of Oak Park,* 396 Ill. 404; *Rothschild* v. *Hussey,* 364 Ill. 557.

Appellants have not established their claim that there are a number of properties used as multiple-family dwellings near them, or even within the village limits, contrary to the ordinance provisions. On the other hand, it appears from the evidence that there are no illegal uses permitted. The territory within the boundaries fixed by appellants seems to be free from any illegal multiple-family use. Nor have appellants shown that other uses permitted in the single-family dwelling district are unjust or such as to make the ordinances discriminatory against them. They have not shown the ordinances to be invalid.

From a careful consideration of the whole record and all points raised by counsel, we have concluded that the lower court was justified in dismissing this complaint for want of equity, and its decree will be affirmed.

*Decree affirmed.*