(No. 31504.—

ADOLPH H. WESEMANN, Appellant, *vs.* THE VILLAGE OF
LA GRANGE PARK, Appellee.

*Opinion filed September 21, 1950—Rehearing denied Nov. 17, 1950.*

FRANKLIN J. STRANSKY, and DITCHBURNE & BOHLING, (HARRY S. DITCHBURNE, of counsel,) all of Chicago, for appellant.

TENNY, SHERMAN, ROGERS & GUTHIE, and EDWARD S. CODY, (S. ASHLEY GUTHRIE, and JOHN P. FORESTER, of counsel,) all of Chicago, for appellee.

Mr. CHIEF JUSTICE SIMPSON delivered the opinion of the court:

This case involves the validity of zoning ordinances of the village of La Grange Park and is here under certificate of the trial judge that such is involved and in his opinion the public interest requires an appeal to this court. The circuit court of Cook County held the ordinances valid, contrary to the recommendation of a master in chancery.

Appellant, Adolph H. Wesemann, filed suit October 21, 1946, seeking to enjoin the village from proceeding against him for an alleged violation of said ordinances, claiming each to be invalid and unconstitutional.

Appellee village by ordinance effective March 12, 1925, adopted extensive zoning regulations. Appellant's house in question located on two lots of the aggregate width of 105 feet, by a depth of 132 feet, stands near the southeast corner of the intersection of Woodlawn and Ashland avenues in said village, facing the latter. Appellant also owns and resides in a house facing Woodlawn Avenue immediately to the rear of the property in question and owns another lot adjoining the latter piece on the east facing the same street. All of these tracts are in block 1 of Richmond's Addition, which was one of the first laid out in the village, and all are zoned in the single-family area.

This block is bounded on the north by Woodlawn, west by Ashland, and south by Pine avenues, and on the east by La Grange Road, the latter being a State and national arterial highway through the village carrying United States routes 12, 20 and 45 with their heavy vehicular traffic of all kinds. Ashland Avenue also carries heavy traffic.

Under the 1925 ordinance the lots in block 1 facing La Grange Road and those facing Pine Avenue were zoned for two-family residences, while the other lots of the block facing Ashland and Woodlawn avenues, respectively, were zoned for single-family use. By its ordinance effective August 2, 1945, the village rezoned the lots facing Pine Avenue in said block from two-family to single-family use and extended the two-family area further north along La Grange Road to a point where it converged with Ashland Avenue, so that there was then a buffer area of two-family residences and some multiple-family residences between La Grange Road and all other property to the west thereof which was all zoned for single-family residences.

West of appellant's property are Ashland, Catherine, Kensington and Spring avenues in order. South of the property in order are Pine, Richmond, Elmwood and Brewster avenues, while north of it are Woodlawn, Oak and Harding avenues in order. The first street east of the property is La Grange Road. In 1925 across this road, to the east of block 1, was a large vacant tract which was thereafter zoned for business purposes. Another vacant tract adjacent to the latter on the east is zoned for multiple-apartment use. There are a few nonconforming two-family residences between the property in question and Brewster Avenue, three blocks to the south. At the northwest corner of Woodlawn and Kensington avenues in the third block west of the property in question is a two-apartment building on a 50-foot lot. Several retail stores had occupied a 150-foot frontage on Catherine Avenue at

the northeast corner of that street and Woodlawn Avenue for about twenty years prior to this suit.

A nursery school is located on Ashland Avenue about 700 feet north of appellant's property, and a beauty parlor on the same street is about 350 feet north of it. A two-story brick building used as the village hall, fire department, police station and jail, with garage and gasoline pump, are located at the southeast corner of the intersection of Woodlawn and Catherine avenues. In the building is a siren used in giving fire alarms and which is operated once a week for testing purposes. There are a few tourist homes along La Grange Road and one about two blocks south and one block west of appellant's property; a two-family residence is located on Kensington Avenue two blocks west from appellant's property. Directly across from appellant's property on Ashland Avenue is a residence referred to as the Messingbring property. This had been used for two-family purposes but is now occupied by only one person. The age of all the two-family residences is not clear, but a number of them are shown to be nonconforming.

Under the 1925 ordinance, property zoned for single-family residence purposes came under the "A" residence district regulations. There were permitted within that district in addition to single-family dwellings, libraries, public museums, municipal halls, churches, temples, schools, colleges, parks, recreation buildings, country clubs not conducted as a business or for profit, farming, truck gardening, greenhouses and nurseries, with accessory uses incident thereto. The "B" residence district under the same ordinance included the above uses and also two-family and three-family dwellings and private clubs not used for hotel purposes. A "C" residence district included all of the foregoing uses and also apartment houses and multitple dwellings, hospitals, boarding and lodging houses. The ordinance defined the word "family" to mean "any number

of individuals living and cooking together on the premises as a single housekeeping unit." It defined "single family dwelling" to be "a detached building having accommodations for and customarily occupied by one family only, and including a private garage with living quarters therein."

The "A" residence district regulations under the ordinance of 1945 permitted single-family residences, churches, convents, rectories, parish house or sabbath school, public parks and playgrounds, municipal offices, including fire and police stations, publicly owned libraries and museums, schools and colleges when not operated for pecuniary profit, and certain enumerated uses auxiliary to the above uses. This ordinance defined "family" to mean "Any number of individuals related by blood, marriage or adoption, living and cooking together in the same premises as a single housekeeping unit, but not including more than two (2) boarders or lodgers," and defined "Dwelling-Single Family" to be "A building designed for or occuupied exclusively by one (1) family."

The property in question was never zoned for any use other than that of a single-family dwelling. It is a two-story frame building, constructed in 1898, and was always used as a single-family residence until the death of appellant's mother in 1940, except for a short period in 1901 when it was occupied by two families. After his mother's death appellant discussed with village officials his intention of converting the property in question into a two-apartment building and presented petitions to the board of trustees asking for a rezoning of the property, which were denied. The village also refused to adopt a proposed ordinance submitted by appellant permitting the remodeling of houses such as his into apartments. He was, however, given permission in June, 1943, to make improvements to the property, and pursuant thereto spent about $10,000. Included within the work done, although not authorized by the village, was that which converted the building into a two-

family apartment with five rooms downstairs and six rooms upstairs, at a cost of about $2000. The exterior of the building was changed by setting in several windows and removing two porches, one in the front and one in the rear. In making the conversion, the front hall of the building was divided so as to permit entrance to the lower flat as well as to the upper rooms. A stairwell was built in the rear to accommodate both apartments. The bathroom was remodeled and one room upstairs was made into a kitchen.

The record shows that appellant was informed by one of the village officials, about the time the permit for improvements was issued, that a group of interested people were taking up with the zoning commission and village board the matter of rezoning a certain territory, including that in which the property in question was located, so as to permit two-family use therein and that favorable results therefrom were expected. This undertaking, however, met with opposition and all efforts to change the zoning failed.

The record does not disclose a need at any time for additional two-family territory. There was a greater zone for two-family residences than required. During the twenty-year period in which the property facing Pine Avenue in the same block with appellant's property was zoned for two-family residences not one of such was constructed therein so far as the record shows. Appellant's position is that his property would be worth more to him zoned for two-family use than for a single family. The value to him is not the test, although it may be considered in connection with all other evidence. The evidence is conflicting and not conclusive as to the effect, on taxable values of property, a rezoning for two-family residences would have, and also as to its effect upon other properties and the public generally.

The village of La Grange Park is predominately one of single-family residences. People have been attracted to the

village and have moved there because of that fact. Some have purchased property and built homes there and have become citizens of the village largely because of the single-family feature existing and enforced there. Ordinarily, a single-family territory is more to be desired as a residence district than one where two-family uses are permitted. In the latter case more people are usually brought to a given property with the attendant congestion and inconvenience, all of which has a direct bearing upon, and substantial relation to, the public health, safety, morals or general welfare of the community.

The whole of block 1, except the portion fronting on La Grange Road, has but one two-family residence, and it is in the farthest corner from appellant's property. This building has stood there for many years and is probably nonconforming. There is but one two-family residence in the block opposite appellant's property which is now occupied by only one person. The next block to the west has but one two-family residence. In the block to the north there is no two-family residence outside of the territory zoned therefor. There is no two-family residence in the entire two blocks to the north and west of the one in which appellant's property is located. Should appellant's contention that the ordinances are void as to his property be sustained, and should he be permitted to use the property in question for two-family purposes, it would amount to the picking out of an isolated tract in the midst of single-family territory and permitting a use of it which would be denied to others in the same locality.

The village of La Grange Park has a population of about 3400 and is residential in character with but a very small business section. It is practically a suburb of Chicago and is about fifteen miles to the west of the Loop district. The village authorities have been diligent in attempting to enforce its zoning regulations. It is the province of the municipal body to draw the line of demarcation as to the

use and purpose to which property shall be assigned or placed, and it is neither the province nor duty of courts to interfere with the discretion with which such bodies are invested, except where there is a clear showing of an abuse of that discretion, which is not the case where the question is merely debatable. *Minkus* v. *Pond,* 326 Ill. 467.

The judgment of municipal authorities with reference to zoning is conclusive unless it is shown to be arbitrary, capricious and unrelated to the public morals, safety and general welfare, and, where there is room for a legitimate difference of opinion concerning the reasonableness of a particular zoning ordinance, the finding of the legislative body will not be disturbed. *Jacobson* v. *Village of Wilmette,* 403 Ill. 250; *Mercer Lumber Cos.* v. *Village of Glencoe,* 390 Ill. 138.

Appellant cites and places much reliance upon *Pringle* v. *City of Chicago,* 404 Ill. 473. The facts in that case are the reverse of those here. We there said "It is readily apparent appellants' property is surrounded and characterized by property in the immediate neighborhood used for purposes other than single-family residences." In the case before us, the property in question is surrounded and characterized by property in the immediate neighborhood used for single-family residences. Other cases cited are readily distinguishable. In determining whether a particular ordinance is, in fact, in the interest of the public welfare, each case must be determined upon its own peculiar facts. *Harmon* v. *City of Peoria,* 373 Ill. 594.

Courts do not question the legislative policy when it has determined what is a proper exercise of the police power, and a zoning ordinance passed in the exercise of a delegated police power is clothed with a presumption in favor of its validity, and the party attacking it must show affirmatively and clearly that it is unreasonable, as it will not be held unreasonable where there is room for a fair difference of opinion on the question. *County of Du Page* v. *Hender-*

*son*, 402 Ill. 179; *Jacobson* v. *Village of Wilmette*, 403 Ill. 250.

The fixing of zoning lines is a matter of legislative discretion and necessarily results in a different classification of uses on either side of the line. This does not render limitations on use of property near the boundary line in a more restricted district unreasonable or invalid. (*DeBartolo* v. *Village of Oak Park*, 396 Ill. 404; *Neef* v. *City of Springfield*, 380 Ill. 275.) A change in zoning cannot be justified simply because certain individuals desire it, but only because the public welfare requires it. (*Kennedy* v. *City of Evanston*, 348 Ill. 426; *Dunlap* v. *City of Woodstock*, 405 Ill. 410.) Where persons have bought property in a certain district under a general zoning ordinance, they have a right to rely upon the rule of law that the classification made will not be changed unless the change is required for the public good. *Kennedy* v. *City of Evanston*, 348 Ill. 426; *Phipps* v. *City of Chicago*, 339 Ill. 315.

In this case, the property in question had been zoned for single-family use more than fifteen years before the attempted conversion. It is true that at the time of the conversion there was a great demand for housing facilities, but there was no shortage of space in the village for two-family residences. Large areas zoned for that purpose lay idle. It would not be feasible for a municipality to alter its zoning regulations with every change of economic conditions. In our opinion, appellant failed to establish that the ordinances are void either generally or as concerns his particular piece of property. The decree of the circuit court is therefore affirmed.

*Decree affirmed.*

THOMPSON, GUNN, and DAILY, JJ., dissenting: We are of the opinion the ordinance, to the extent it is applied to appellant's property, is void.