BOARD OF EDUCATION SCHOOL DISTRICT NO. 67, Plaintiff-Appellee, v. MARGARET SIKORSKI, as a Representative of all Taxpayer Residents of School District No. 67, Defendant-Appellee (Niles Township Trustees of Schools, Defendant-Appellee; Bernard Katz and Company, Inc., Defendant-Appellant).

First District (4th Division)   No. 1—90—1353

Opinion filed May 31, 1991.

Robert Marks, of Marks, Marks & Kaplan, Ltd., of Chicago, for appellant.

David Schachman, Michael K. Fridkin, and Julia A. Fenton, of Sachnoff & Weaver, Ltd., of Chicago, for appellee Board of Education School District No. 67.

JUSTICE McMORROW delivered the opinion of the court:

The instant appeal questions whether the Board of Education of School District No. 67 (the Board) violated certain provisions of the Open Meetings Act (Ill. Rev. Stat. 1989, ch. 102, par. 41 *et seq.*) and

the School Code (Ill. Rev. Stat. 1989, ch. 122, par. 1—1 *et seq.*) in the public sale of certain Board property to defendant Bernard Katz & Co., Inc. (Katz), and whether these violations were grounds to render the sales contract between the Board and Katz unenforceable as void *ab initio.* We conclude that the Board's holding of an executive session to decide that the sale of school property should be postponed by three days violated the Open Meetings Act. (Ill. Rev. Stat. 1989, ch. 102, par. 42(c).) However, we also determine that the Board cured and ratified its violation of the Open Meetings Act when the Board held subsequent public meetings regarding sale of the property. In addition, we find that the Board's failure to provide additional publication of the rescheduled date of sale did not violate the School Code. (Ill. Rev. Stat. 1989, ch. 122, par. 5—22.) We also conclude that, assuming *arguendo* the Board had violated the School Code, the Board is nevertheless estopped from raising its violation as ground to render void its contract with Katz. We find the Board's argument regarding the trustees' delegation to the Board of the authority to enter into a contract with Katz insufficient basis, on this record, to affirm the trial court's judgment. Accordingly, we reverse the trial court's ruling and remand the matter for further proceedings consistent herewith.

The following facts are undisputed in the record and derive from the parties' cross-motions for summary judgment. On September 21, 1989, the Board adopted a resolution directing the Niles Township Trustees of Schools to sell property comprising the Hynes Elementary School (hereinafter the Hynes School property) upon terms specified in the resolution and in a trustees' notice of sale attached thereto. The notice of sale provided that sealed bids would be received on October 19, 1989, and that the Board, at its October 26, 1989, meeting, would accept one bid and execute a sales contract for not less than $2 million net. The notice of sale also required an earnest money deposit of 20% of the bid, and stated, *inter alia,* that the Hynes School property would revert to the Board if the property were not rezoned for multifamily residential use by the Village of Morton Grove.

The Board received several requests for information concerning the sale and on October 2, 1989, sent bid packages in response thereto. Defendant Katz was among those who requested and received a bid package. The trustees' notice of sale was timely published as required by the School Code, *i.e.,* publication was given in a local newspaper for three consecutive weeks regarding the terms,

conditions, and date of public sale of the property. See Ill. Rev. Stat. 1989, ch. 122, par. 5—22.

Three days before the anticipated public sale, on October 16, 1989, a neighbor to the Hynes School property filed suit to enjoin the sale, arguing that the sale should be postponed pending the election of new school board members. (Spatz v. Board of Education, No. 89—CH—9249 (hereinafter *Spatz*).) On October 18, 1989, the trial court entered a temporary restraining order that precluded the Board from accepting bids on the scheduled date of public sale, which was set for the following day, *i.e.*, October 19. The Board informed those who had requested bid packages, including defendant Katz, that the public sale would not be held on the set date because of the temporary restraining order. The Board also posted public notice that it would hold an executive meeting at 1 p.m. on October 20 to determine whether the date of public sale of the Hynes School property should be rescheduled to a particular date and time.

On the morning of October 20, 1989, the trial court dissolved the temporary restraining order in the *Spatz* case that had prohibited the Board's holding of a public sale of the Hynes School property. In the afternoon, the Board met in executive session to determine whether the public sale of the Hynes School property should be rescheduled. At the end of its executive session, the Board voted to receive bids at 1 p.m. on October 23, 1989. The Board also voted to accept a bid and execute a contract of sale on October 26, 1989, the date originally set in the published notice of sale. The Board posted public notice at its offices indicating that this vote had been reached at its executive session. The Board also notified persons who had requested bid packages, as well as those who had appeared for the original public sale on October 19, that the date of public sale had been rescheduled to October 23. The Board did not publish notices in local newspapers regarding the rescheduled date of the public sale.

On the date and time of the rescheduled public sale of the Hynes School property, defendant Katz appeared and submitted a bid for the minimum amount stated in the notice of sale, *i.e.*, $2 million. No other person or entity appeared to submit a bid for the property. At a duly convened meeting on October 24, 1989, the trustees adopted a resolution approving the Board "as designee for the purpose of the sale of the Hynes School." A day later, a neighbor of the school, Margaret Sikorski, filed a declaratory judgment action seeking to enjoin the sale on the ground that the Board had violated the Open Meetings Act and the School Code. (Sikorski v. Niles Township Trustees of Schools, No. 89—CH—09605 (hereinafter *Sikorski*).) This

suit was consolidated with the earlier action, *Spatz*, which remained pending in the circuit court.

On October 26, 1989, *i.e.*, the date designated in the original notice of sale, the Board accepted the Katz bid and signed the real estate contract with Katz for sale of the Hynes School property. Katz deposited with the Board the $400,000 earnest money required by the contract, and complied with the contract's requirement that Katz initiate proceedings to have the Hynes School property rezoned for multifamily residential use.

An election of new Board members was held in November 1989, and four new members were elected to the seven-person Board. The new Board, a majority of which apparently disfavored sale of the Hynes School property, filed suit against Katz for a declaratory judgment that the prior Board's actions with respect to the public sale of the Hynes School property violated the Open Meetings Act and the School Code. The Board's suit was consolidated with the *Sikorski* and *Spatz* litigation. Thereafter, the parties filed cross-motions for summary judgment with respect to the Board's declaratory judgment action.

The trial court determined that the Board violated the Open Meetings Act (Ill. Rev. Stat. 1989, ch. 102, par. 42(c)) when the Board held an executive session, rather than a public session, to determine that the public sale date should be rescheduled to a particular date. The trial court also determined that the Board violated the School Code (Ill. Rev. Stat. 1989, ch. 122, par. 5—22) when the Board failed to publish additional public notice in local newspapers to indicate that the public sale had been continued to a later date. On these bases, the trial court declared the contract between the Board and Katz void *ab initio* and unenforceable. Katz appeals from this ruling.

We consider first whether the record shows, as a matter of law (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005; *Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867 (standard for summary judgment)), that the Board violated the Open Meetings Act on October 20, 1989, when it held an executive session, rather than a public session, to choose a new date for public sale of the Hynes School property. We note that there is no dispute that the Board's meeting was an executive session, *i.e.*, one closed to the public.

The parties' disagreement focuses on whether this closed session was governed by certain provisions of the Open Meetings Act. Specifically, the Board and Katz disagree with respect to whether the Board's executive meeting pertained to the selling price of the

Hynes School property. The parties also dispute whether the executive session was held to discuss the impact of the *Spatz* litigation upon the intended sale of the Hynes School property.

■ The Open Meetings Act states in pertinent part that "[a]ll meetings of public bodies shall be public meetings except for *** (c) meetings where the *** selling price of real estate is being considered by the school board of a public school district, [or] *** (h) meetings held to discuss litigation when an action against, affecting, or on behalf of the particular body has been filed and is pending in a court." Ill. Rev. Stat. 1989, ch. 102, pars. 42(c), (h).

■ We cannot say, as a matter of law, that the Board's October 20, 1989, executive session meeting came within the provisions of the Open Meetings Act that exempt sessions held to discuss either the sale price of real property or litigation pending against the Board. The minutes of the Board's meeting, the contents of which were the subject of a stipulation between the parties, simply state that the Board voted to move into executive session "to discuss the sale of the School." The Board then voted to hold "a public auction *** on Monday, October 23, 1989, for the purpose of selling Hynes Elementary School." There is nothing in the record to show that the executive meeting related to the selling price of the Hynes School property, as required by subsection (c) (Ill. Rev. Stat. 1989, ch. 102, par. 42(c)) as quoted above. Consequently, this subsection did not justify the Board's holding of an executive session on October 20, 1989.

■ The record also does not demonstrate that the Board's executive meeting was designed to discuss the pending *Spatz* litigation against the Board, as required in subsection (h) (Ill. Rev. Stat. 1989, ch. 102, par. 42(h)) above. Katz asserts that the Board could have discussed any matter, such as the *Spatz* litigation, that was germane to the Board's intended topic of discussion regarding whether to reschedule the date of public sale of the Hynes School property. (See *Argo High School Council of Local 571 v. Argo Community High School District 217* (1987), 163 Ill. App. 3d 578, 516 N.E.2d 834.) On this basis, Katz argues that we should infer, from the circumstances surrounding the Board's executive meeting, that the Board probably discussed the *Spatz* litigation during its executive session.

However, the record does not disclose that the Board actually discussed the *Spatz* litigation, and we decline to speculate on whether the Board did, in fact, discuss this matter during its executive meeting. We note that Katz could have requested that the trial court "examine in camera any portion of the minutes of a meeting at which a violation of the Act is alleged to have occurred," or that

Katz could have asked that the trial court "take such additional evidence as it deems necessary," in order to prove Katz' allegation regarding the scope of the Board's executive session. (Ill. Rev. Stat. 1989, ch. 102, par. 43(b).) Katz did not pursue either of these alternatives to provide factual support for his position that the Board discussed the *Spatz* litigation during its executive meeting on October 20, 1989. Under these circumstances, we find insufficient ground to disturb the trial court's determination that the Board's holding of an executive session on October 20, 1989, violated the Open Meetings Act.

However, we further determine that the Board's violation of the Open Meetings Act was inadequate basis to render the sales contract between the parties void *ab initio* and unenforceable, since the Board's decision to reschedule public sale of the Hynes School property was ratified in subsequent public meetings of the Board.

■ The Open Meetings Act states that the trial court, when confronted with a violation of the Open Meetings Act, may choose from a variety of remedies, including a *mandamus* that meetings be open, an injunction against future violations of the Act, an order that meeting minutes be made public, or a declaration that voids final action taken at a closed meeting in violation of the Act. (Ill. Rev. Stat. 1989, ch. 102, par. 43(c).) Thus, the trial court is not required to declare a final action null and void, but is permitted to choose an "appropriate" remedy that satisfies "orderly administration and the public interest, as well as for the interests of the parties." (Ill. Rev. Stat. 1989, ch. 102, par. 43(c); see, *e.g., Williamson v. Doyle* (1983), 112 Ill. App. 3d 293, 445 N.E.2d 385; *Betts v. Department of Registration & Education* (1981), 103 Ill. App. 3d 654, 431 N.E.2d 1112.) Moreover, it has been held improper to declare a public body's decision null and void when its initial decision, although reached during an improper executive session, has been subsequently ratified by additional public meetings. See, *e.g., Argo High School Council of Local 571 v. Argo Community High School District 217* (1987), 163 Ill. App. 3d 578, 516 N.E.2d 834; *Lindsey v. Board of Education* (1984), 127 Ill. App. 3d 413, 468 N.E.2d 1019; *Collinsville Community Unit School District No. 10 v. Witte* (1972), 5 Ill. App. 3d 600, 283 N.E.2d 718.

■ Based upon this precedent, we conclude that the Board's subsequent actions, taken during public meetings, ratified and cured the Board's previous decision during executive session to reschedule the date for public sale of the Hynes School property. According to the record, after the Board's closed session, the Board held public

meetings to: (1) receive bids for purchase of the property; (2) determine which bid, if any, to accept for sale of the property; and (3) decide if it should enter into a contract for sale of the property to the chosen bidder. In light of these circumstances, the Board's earlier violation of the Open Meetings Act was cured and ratified by its subsequent public meetings, each of which provided the public with a forum to air their views with respect to sale of the Hynes School property. As a result, the trial court erred when it declared the parties' sale contract null and void because of the Board's violation of the Open Meetings Act. See *Collinsville Community Unit School District No. 10 v. Witte* (1972), 5 Ill. App. 3d 600, 283 N.E.2d 718; see also *Bethune v. Larson* (1989), 188 Ill. App. 3d 163, 544 N.E.2d 49.

We further determine that the Board's failure to publish additional public notice in local newspapers regarding the rescheduled date of public sale of the Hynes School property did not violate the School Code. The Code states in relevant part that the trustees "shall *** sell the property at public sale, by auction or sealed bids, after first giving notice of the time, place, and terms thereof by notice published once each week for 3 successive weeks prior to the date of the sale *** in a newspaper published in the district." Ill. Rev. Stat. 1989, ch. 122, par. 5—22.

The School Code does not explicitly anticipate the type of factual pattern presented in the instant cause, where a Board must reschedule its public sale because of the entry of a temporary restraining order that prohibits the public sale on the date originally scheduled. Because of this lack of specific reference to circumstances such as those presented in the case at bar, the Board contends that section 5—22 of the Code quoted above, regarding publication of public sale of school property, is mandatory and recognizes no exception to its publication requirements.

We cannot accept the Board's argument that section 5—22 admits to no exceptions in its publication requirements. In addition to the rules regarding publication cited by the Board, section 5—22 also provides that if "a reasonable minimum selling price *** is not met or if no bids are received," the Board may renew its efforts to sell the property, and "may raise the minimum selling price without repeating the public sale procedures." (Ill. Rev. Stat. 1989, ch. 122, par. 5—22.) Similarly, the Board is permitted to take further steps to sell the property, without repeating the public sale procedures of this provision of the Act, where the original selling price is left unal-

tered. *Harrisburg Community Unit School District No. 3 v. Steapleton* (1990), 195 Ill. App. 3d 1020, 553 N.E.2d 76.

■■ ■ We find that the failure of section 5—22 to explicitly provide for the instant factual pattern created an ambiguity regarding the proper method of public notice once the Board's original, properly published notice of public sale was temporarily enjoined by the circuit court because of the filing of the *Spatz* litigation. When a statute is ambiguous, its terms must be interpreted according to the purposes of the legislation and the evils sought to be remedied. (See, *e.g., American Country Insurance Co. v. Wilcoxon* (1989), 127 Ill. 2d 230, 537 N.E.2d 284.) Particularly where public notice of official action is concerned, the ultimate inquiry is whether all interested parties are adequately informed of the actions taken by the public body. See *Jacobson v. Village of Wilmette* (1949), 403 Ill. 250, 85 N.E.2d 753; *City of Carbondale v. Walker* (1909), 240 Ill. 18, 88 N.E. 296.

■ The parties do not dispute that the Board's original notice of public sale was properly published under section 5—22 of the School Code. The record demonstrates that all parties who expressed an interest in the original public sale were promptly and fully notified of the rescheduled date for sale of the Hynes School property. The record also indicates that public notice of the rescheduled date of sale was plainly posted by the Board for public viewing. Moreover, the necessity for rescheduling the date of public sale was created by litigation that was not instituted by the Board, and the new date chosen by the Board was only three days after the initially scheduled date. Given all of these circumstance, we cannot say that the Board's actions in the instant cause violated the publication requirements of section 5—22 of the School Code.

The cases cited by the Board are inapposite to the instant cause, as they pertain to judicial sales of foreclosed property, which are not governed by the School Code and are specifically regulated by particular procedures that must be followed when a judicial sale is rescheduled. (See *City of Chicago v. Central National Bank* (1985), 134 Ill. App. 3d 22, 479 N.E.2d 1040; *First Federal Savings & Loan Association v. Chapman* (1983), 116 Ill. App. 3d 950, 452 N.E.2d 660.) Similarly, the reported decisions cited by the Board regarding a candidate's failure to comply with mandatory provisions of the Election Code are factually inapposite. See *Serwinski v. Board of Election Commissioners* (1987), 156 Ill. App. 3d 257, 509 N.E.2d 509; *Havens v. Miller* (1981), 102 Ill. App. 3d 558, 429 N.E.2d 1292.

■■ Moreover, assuming *arguendo* that the Board's failure to publish the rescheduled date of sale violated the School Code, we conclude that the Board is estopped from asserting its own violation as ground to render the parties' sale contract null and void *ab initio*. As Katz asserts, the Board cannot set up its own violation of the School Code in order to retain the Hynes School property and render void *ab initio* the contract between the parties. See, *e.g.*, *De-Kam v. City of Streator* (1925), 316 Ill. 123, 146 N.E. 550; *A.S. Schulman Electric Co. v. Village of Fox Lake* (1983), 115 Ill. App. 3d 746, 450 N.E.2d 1356.

*Branigar v. Village of Riverdale* (1947), 396 Ill. 534, 72 N.E.2d 201, illustrates this point. In that case, the Village of Riverdale entered into a contract with a private company, Branigar, whereby the village would pay to Branigar a percentage of the village's water revenues in exchange for Branigar's construction of a water supply system for certain residences to be built in the village. After the system was constructed and became operational, the village refused to pay Branigar pursuant to the parties' contract. The village claimed that the agreement was void because the village had failed to publish notice of the contract to its residents. The Illinois Supreme Court rejected the village's argument, reasoning that where "contracts are irregularly made, and the city accepts the benefits of the contracts, it is estopped from setting up or relying on its own irregularity to defeat recovery. [Citation.]" (396 Ill. at 546.) The court noted that Branigar had "acted in good faith and parted with value for its benefit," and that the village's defense pertained to "mere irregularities in the exercise of power conferred [regarding] *** failure to make publication" of the contract. (396 Ill. at 546.) The court observed that "to permit a city *** to say that it neglected publication [under these circumstances] *** would be a fraud which the law ought not to permit." 396 Ill. at 546.

Similar to the argument made by the village in *Branigar*, the Board in the instant cause has attempted to set up its own failure to publish adequate notice of sale of the Hynes School property as ground to void its contract with Katz. Katz, like the private contractor in *Branigar*, has parted with value in reliance on his agreement with the Board, by depositing $400,000 earnest money with the Board and by instituting proceedings to have the property rezoned for multifamily residential use. In accordance with the Illinois Supreme Court's decision in *Branigar*, we conclude that, assuming *arguendo* the Board's actions violated the School Code, the Board is

estopped from asserting its violation of the School Code as ground to render void its contract with Katz.

The Board also argues that its contract with Katz is void, because the trustees lacked the legal authority to delegate to the Board the power to execute the contract selling the Hynes School property to Katz. To support this position, the Board cites exclusively to the language of section 5—22 which states that "trustees of schools *** shall *** sell the property." (Ill. Rev. Stat. 1989, ch. 122, par. 5—22.) The Board refers to no further legal authority to support its claim on this issue.

With respect to the duties of the trustees and the School Board in the sale of school property, section 5—22 states in pertinent part as follows:

> "When in the opinion of the school board, a school site *** has become unnecessary or unsuitable or inconvenient for a school, or unnecessary for the uses of the district, the school board *** may direct that said property be sold ***. The school board shall forthwith notify the trustees of schools *** of the terms upon which they desire the property to be sold. *** [T]he trustees of schools *** shall, within 60 days after receiving such notice, sell the property at public sale ***. ***
>
> ***
>
> *** The board may accept a written offer equal to or greater than the established minimum selling price for the described property. ***
>
> The deed of conveyance shall be executed by the president and clerk or secretary ***." Ill. Rev. Stat. 1989, ch. 122, par. 5—22.

■■ Initially we note that there is nothing in this provision that explicitly directs whether the contract for sale of school property shall be executed by the trustees or the School Board. Because the trustees are deemed the legal title owners to school property (Ill. Rev. Stat. 1989, ch. 122, par. 5—21), it has been held that the School Board does not possess the inherent authority to sell or lease school property to a third party. (*Carter Oil Co. v. Liggett* (1939), 371 Ill. 482, 21 N.E.2d 569.) However, it has also been recognized that a municipal corporation or body politic may, at least as a general rule, delegate a purely ministerial function to its subordinate. (See 63 C.J.S. *Municipal Corporations* §962, at 514 (Supp. 1950 & 1990).) The trustees in the case at bar are deemed a body politic. (Ill. Rev. Stat. 1989, ch. 122, par. 5—2.) Although the trustees hold legal title to school property, the statute designates the Board as the entity

which must accept or reject any bids for purchase of school property. Thus, the trustees perform the nondiscretionary task of executing the sales contract pursuant to the directions of the Board. In the case at bar, the trustees simply delegated to the Board the ministerial function of executing the sales contract with Katz. The Board asserts no harm or prejudice to school interests because of this delegation of ministerial power. On this record, we find the Board's argument insufficient ground to affirm the trial court's ruling.

For the reasons stated, the judgment of the circuit court of Cook County is reversed, and the cause remanded for further proceedings consistent herewith.

Reversed and remanded.

JIGANTI, P.J., and JOHNSON, J., concur.