2024 IL App (1st) 230139

No. 1-23-0139

Opinion filed April 24, 2024

Third Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| STEPHEN EBERHARDT, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 L 65042 |
| | ) | |
| THE VILLAGE OF TINLEY PARK, MICHAEL | ) | |
| GLOTZ, KRISTIN THIRION, WILLIAM BRADY, | ) | |
| WILLIAM BRENNAN, MICHAEL MUELLER, DAVID | ) | |
| NIEMEYER, PATRICK CARR JR., and PATRICK | ) | |
| WALSH, | ) | Honorable |
| | ) | Mary Kathleen McHugh, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices D.B. Walker and R. Van Tine concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Stephen Eberhardt, an attorney representing himself *pro se*,[1] filed a lawsuit

against the Village of Tinley Park (Village), several of its officials and employees, and its outside

counsel. Plaintiff alleged that defendants (1) violated the Illinois Constitution by enacting an

---

[1]According to the records of the Illinois Attorney Registration and Disciplinary Commission, plaintiff has retired and is not authorized to practice law. His last registered year was 2024.

ordinance that required public comments of special Village board meetings to be germane to agenda items, (2) are liable under section 1983 of the federal Civil Rights Act (42 U.S.C. § 1983 (2018)) for violating his federal free speech and due process rights by requesting an investigation of plaintiff with the Illinois Attorney and Registration Commission (ARDC), and (3) unlawfully appointed outside counsel as their representative. The trial court granted, with prejudice, the defendants' motions to dismiss plaintiff's complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2020)).

¶ 2    On appeal, plaintiff argues that the circuit court erred in granting the defendants' motions to dismiss with prejudice because he alleged sufficient facts to set out the essential elements of his alleged causes of action and no affirmative defense or other matter defeated his claims.

¶ 3    For the reasons that follow, we affirm the judgment of the circuit court.[2]

¶ 4                                I. BACKGROUND

¶ 5    The operative pleading here is plaintiff's second amended complaint, filed April 13, 2022, wherein plaintiff alleged that at all relevant times he was a resident and taxpayer of the Village, a self-employed attorney with offices in the Village, and a well-recognized local voice speaking often at Village meetings in support of open and honest government and against government secrecy and corruption. He sued the Village; Michael Glotz, a former Village trustee and mayor, in his individual capacity; Kristin Thirion, a former Village clerk and executive administrative assistant, in her individual capacity; William Brady, a Village trustee, in his individual capacity;

---

[2]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

William Brennan, a Village trustee, in his individual capacity; Michael Mueller, a Village trustee, in his individual capacity; David Niemeyer, a former Village manager, in his individual capacity; Patrick Carr Jr., a former Village assistant manager, 911 coordinator, and Village manager, in his individual capacity (collectively, the Village defendants); and Patrick Walsh, individually and in his capacity as the agent and president of the Walsh Law Group, P.C. The Village defendants and defendant Walsh have separate counsel.

¶ 6     In his second amended complaint,[3] plaintiff alleged that the Village defendants executed their plan to take control of the Village board after the April 2019 election by silencing critical speech during the public comment portion of Village meetings; using social media to spread false information, post derogatory comments, and bully and harass people to deter them from speaking at Village meetings; blocking plaintiff and others from commenting on the Village defendants' social media pages; engaging in retaliatory actions for critical comments; erasing electronic messages that were potentially public records; and using taxpayer funds to support the Village defendants' political and personal interests. Plaintiff also alleged that the Village defendants appointed defendant Walsh as their counsel to assist them in their unlawful actions, including refusing proper requests to produce public records, in violation of the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2020)), fabricating and enforcing restrictive rules for public

---

[3]Although this operative pleading is entitled as plaintiff's second amended complaint, it is actually his corrected second amended complaint. This complaint's title caused some confusion regarding the Village defendants filing their responsive motion to dismiss to the correct complaint. The Village defendants, however, informed the trial court during argument that plaintiff's two most recent complaints were substantially the same (except for the facts upon which plaintiff's section 1983 civil rights claim was predicated) and the Village defendants' arguments as to both pleadings were the same.

comment, in violation of the Open Meetings Act (5 ILCS 120/1 *et seq.* (West 2020)), and interfering with plaintiff's actions regarding FOIA matters and litigation and his clients' access to the courts.

¶ 7    Specifically, plaintiff alleged that when the Village defendants, in December 2019, enacted ordinance No. 2019-O-077, which required public comments at special Village board meetings, special commission, or special committee meetings to be germane to items on that particular special meeting agenda, they imposed content-based restrictions on public comments that violated the Open Meetings Act and the free speech and peaceful assembly rights of plaintiff and others under the Illinois Constitution (Ill. Const. 1970, art. I, §§ 4-5). See Tinley Park Ordinance No. 2019-O-077 (approved Dec. 3, 2019) (codified at Tinley Park Code of Ordinances § 43.01). Plaintiff alleged that it was part of defendants' plan to thereafter unlawfully reschedule regular meetings as special meetings to trigger the use of the unconstitutional content-based restrictive rules on public comment.

¶ 8    Plaintiff also alleged that defendant Niemeyer, without authority but acting under color of law, filed with the ARDC a request for an investigation against plaintiff, which contained intentional and knowing false facts and misrepresentations. According to plaintiff, this investigation request was intended to harass him, retaliate against him for suing defendants in federal court, and interfere with and suppress his freedom of speech, which was critical of defendants' conduct or fitness for office. Plaintiff alleged that defendant Walsh drafted the request for investigation and defendant Carr submitted a reply to the ARDC. Plaintiff alleged that the then-mayor neither authorized the filing of the request for investigation nor was consulted about it.

¶ 9      Furthermore, plaintiff alleged that the Village defendants, without authority, appointed defendant Walsh to represent the Village and its officials and employees as their attorney and thereby obligated the taxpayers to pay for defendants' personal and professional attacks on plaintiff and not for any proper purpose of the Village. Plaintiff alleged that the then-mayor did not sign the resolution appointing Walsh as an attorney for the Village.

¶ 10     Plaintiff sought the following relief: (1) as against the Village, a declaration that ordinance No. 2019-O-077, which restricted speech at special Village board meetings, violated the Open Meetings Act and was unconstitutional facially and as applied under the rights guaranteed by the Illinois Constitution, and an injunction against the enforcement of this ordinance (count I); (2) as against all the individual defendants, damages under the guarantees of section 1983 of the Civil Rights Act for alleged violations of plaintiff's free speech rights under the first amendment and due process and equal protection rights under the fourteenth amendment of the United States Constitution (U.S. Const., amends. I, XIV) based on defendants' ARDC investigation request (count II), and (3) as against the Village, Glotz, Thirion, Brady, Brennan, Mueller, and Walsh, declaratory and injunctive relief for their alleged unlawful appointment of defendant Walsh as their attorney and an order for Walsh to reimburse the Village for any taxpayer funds paid to him or his law firm (count III).

¶ 11     The Village defendants moved under section 2-619.1 of the Code to dismiss plaintiff's second amended complaint. In their motion and supporting pleadings, they argued that (1) plaintiff's complaint was "lengthy, incoherent, protracted and chock full of superfluous statements, inuendo and conclusory allegations," in violation of section 2-603(a) of the Code (735

ILCS 5/2-603(a) (West 2020)), (2) *res judicata* barred counts I and II to the extent plaintiff sought to resurrect his first amendment and fourteenth amendment equal protection and due process claims, which had already been litigated in federal court,[4] (3) plaintiff pled multiple causes of action in single counts, in violation of section 2-603(b) of the Code (*id.* § 2-603(b)), (4) plaintiff failed to plead taxpayer standing regarding his count III claim, and (5) defendants were immune from liability.

¶ 12 In response, plaintiff moved to strike the motion to dismiss, arguing, *inter alia*, that it was full of improper and undeveloped arguments, his claims withstood section 2-603 scrutiny, the equitable doctrine of *res judicata* should be relaxed in the interest of justice and did not apply to his constitutional claims predicated on the Illinois Constitution, and the Village defendants failed to support their immunity claims with affidavits regarding their acts being within the scope of their employment as Village officials and employees.

¶ 13 Meanwhile, defendant Walsh also moved under section 2-619.1 of the Code to dismiss counts II and III of plaintiff's second amended complaint, arguing that (1) plaintiff, who was not a current taxpayer in the community and never owned any property in the Village, lacked standing to bring his taxpayer lawsuit, (2) there was no basis for individual liability against defendant Walsh because the Village engaged the Walsh Law Group, P.C., and not defendant Walsh individually,

---

[4]In *Eberhardt v. Village of Tinley Park*, No. 1:20-cv-01171 (N.D. Ill. Sept. 2, 2021), the court dismissed with prejudice plaintiff's federal constitutional claims for lack of standing and jurisdiction and dismissed without prejudice plaintiff's remaining state law claims. The federal case was filed against all the defendants in the case before this court except for defendants Brennan, Mueller, and Carr. The federal case also included five other individuals who are not defendants in the case before this court.

(3) FOIA did not provide for a private right of action against an individual, (4) purported violations of state law do not infringe upon the United States Constitution as pled by plaintiff, (5) Illinois Supreme Court Rule 775 (eff. Dec. 7, 2011) provides absolute immunity to defendant Walsh for drafting a request for investigation to the ARDC, (6) plaintiff failed to adhere to the formal pleading requirements under section 2-603 of the Code, and (7) the appointment of the Walsh Law Group, P.C., complied with the Village code, pursuant to the Village's purchasing ordinance, and that appointment was later ratified by the full board of trustees. Walsh attached as exhibits to his motion Village public records, including a resolution and purchasing ordinance.

¶ 14    Plaintiff moved to strike defendant Walsh's motion and supporting pleadings, arguing, *inter alia*, that (1) plaintiff had standing to sue as a taxpayer because he had paid his wife's property taxes, (2) taxpayer standing was irrelevant to his section 1983 claim, (3) he had taxpayer standing to challenge the hiring of Walsh because plaintiff had paid phone bill communications taxes and the funds he paid for the water bill, vehicle sticker tax, sales tax, motor fuel tax, and income tax were forwarded to the general fund of the Village, (4) the Village's purchasing ordinance was superseded by the time of the appointment of defendant Walsh's law firm in July 2019, (5) Walsh did not submit any affidavit stating that he was immune based on communications with the ARDC, (6) Walsh did not submit any affidavit compliant with Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013) and section 2-619 of the Code, swearing to the truth of the alleged facts he argued, (7) Walsh's exhibits on the standing issue violated Illinois Supreme Court Rule 138 (eff. Jan. 1, 2018) by putting plaintiff's personal identity information on the public portal, and (8) Rule 775 did not immunize defendants' unconstitutional actions.

¶ 15    After briefing and oral argument, the trial court, on January 6, 2023, granted defendants' motions to dismiss with prejudice. The written dismissal order indicated that the trial court stated its reasons for the dismissal on the record; however, no court reporter was present for the January 6, 2023, court date. The court also denied plaintiff's motions to strike. Plaintiff timely appealed.

¶ 16                                    II. ANALYSIS

¶ 17    Defendants moved to dismiss plaintiff's complaint pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2020)). Section 2-619.1 provides that motions with respect to pleadings pursuant to sections 2-615 and 2-619 of the Code (*id.* §§ 2-615, 2-619) may be filed together as a single motion. *Id.* § 2-619.1; *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164 (2003).

¶ 18    A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. 735 ILCS 5/2-615 (West 2020); *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). In ruling on a section 2-615 motion to dismiss, all well-pleaded facts and all reasonable inferences that may be drawn from those facts are accepted as true. *Rockford Memorial Hospital v. Havrilesko*, 368 Ill. App. 3d 115, 120 (2006). However, a plaintiff may not rely on mere conclusions of law or fact unsupported by specific factual allegations. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). The critical inquiry is whether the allegations of the complaint are sufficient to establish a cause of action under which relief may be granted. *Malinksi v. Grayslake Community High School District 127*, 2014 IL App (2d) 130685, ¶ 6. Thus, only those facts apparent from the face of the pleadings, documents attached to a complaint (including exhibits, depositions, and affidavits), matters of which the court can take

judicial notice, and judicial admissions in the record may be considered in ruling on a section 2-615 motion. *Bruss v. Przybylo*, 385 Ill. App. 3d 399, 405 (2008). A court may also consider documents attached to a motion to dismiss where the plaintiff put their contents at issue but failed to attach them to the complaint. See *Perkaus v. Chicago Catholic High School Athletic League*, 140 Ill. App. 3d 127, 134 (1986). Where allegations made in the body of the complaint conflict with facts disclosed in the exhibits, the exhibits control and the allegations will not be taken as true in evaluating the sufficiency of the complaint. *Bajwa v. Metropolitan Life Insurance Co.*, 208 Ill. 2d 414, 430-31 (2004).

¶ 19    In contrast, a motion to dismiss based on section 2-619 of the Code (735 ILCS 5/2-619 (West 2020)) admits the legal sufficiency of the complaint but raises defects, defenses, or other affirmative matter, appearing on the face of the complaint or established by external submissions, that defeat the claim. *Orlak v. Loyola University Health System*, 228 Ill. 2d 1, 6-7 (2007). An "affirmative matter" for the purposes of a section 2-619 motion is something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint. *Cwikla v. Sheir*, 345 Ill. App. 3d 23, 29 (2003). The purpose of section 2-619 is to afford litigants a means to dispose of issues of law and easily proven issues of fact at the outset of litigation. *Brummel v. Grossman*, 2018 IL App (1st) 162540, ¶ 22.

¶ 20    In considering a combined motion to dismiss pursuant to section 2-619.1, we accept all well-pleaded facts in the complaint as true, drawing all reasonable inferences from these facts in favor of the nonmoving party. *Marshall*, 222 Ill. 2d at 429. Our review under either section 2-615

or section 2-619 of the Code is *de novo. Hadley v. Doe*, 2015 IL 118000, ¶ 29. Further, we may affirm the trial court's judgment on any basis in the record, regardless of the court's reasoning. *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 17.

¶ 21                    A. Free Speech and Village Ordinance No. 2019-O-077

¶ 22    Plaintiff argues that when the Village enacted ordinance No. 2019-O-077, which required public comments at special Village board meetings to be germane to items on the agenda, the Village imposed content-based restrictions on public comments that violated the Open Meetings Act[5] and the free speech and peaceful assembly rights of plaintiff and others under the Illinois Constitution. Plaintiff sought a declaration against the Village that ordinance No. 2019-O-077 violated the Open Meetings Act and was unconstitutional facially and as applied to him and others under the Illinois Constitution. Plaintiff alleged the ordinance was facially unconstitutional because it was content based, was not reasonably necessary to protect a significant government interest, and unreasonably restricted rather than accommodated the right to address public officials. Plaintiff also alleged that the ordinance was unconstitutional as applied to him because the Village manipulated the meeting schedules to unlawfully characterize rescheduled regular meetings as special meetings and the ordinance was enforced only against him "at all relevant times herein." Plaintiff also sought an injunction against the enforcement of this ordinance.

---

[5]Plaintiff states that his reference to the Open Meetings Act in count I of his complaint does not violate section 2-603 of the Code by seeking multiple theories of relief in a single count. Plaintiff explains that he refers to the Open Meetings Act to show that its purpose and the legislature's intent in enacting it support his claim that defendants violated his constitutional right to free speech.

¶ 23    If a plaintiff prevails in an as-applied claim, he may enjoin the objectionable enforcement of the enactment only against himself, while a successful facial attack voids the enactment in its entirety and in all applications. *Lamar Whiteco Outdoor Corp. v. City of West Chicago*, 355 Ill. App. 3d 352, 365 (2005). An "as applied" challenge requires the challenging party to show that a statute is unconstitutional as it applies to him or her. *People v. Garvin*, 219 Ill. 2d 104, 117 (2006). Thus, the particular facts and circumstances surrounding the challenging party become relevant. *In re M.A.*, 2015 IL 118049, ¶¶ 39-40; *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305-06 (2008). Plaintiff, however, failed to allege any facts to support his conclusory as-applied allegations.

¶ 24    A facial challenge to the constitutionality of a legislative enactment is the most difficult challenge to mount successfully. *Napleton*, 229 Ill. 2d at 305. In a typical facial challenge, the challenging party would have to establish that there is no set of circumstances under which the law would be valid. The fact that the law could be found unconstitutional under some circumstances would not establish its facial invalidity. *In re M.A.*, 2015 IL 118049, ¶ 39. However, a facial challenge based on first amendment overbreadth is provided out of concern that the threat of enforcement of an overbroad law may chill or deter constitutionally protected speech, especially when the law imposes criminal penalties. *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003); *People v. Clark*, 2014 IL 115776, ¶ 11; *People v. Bailey*, 167 Ill. 2d 210, 226 (1995). Yet, invalidating a law that in some of its applications is perfectly constitutional has harmful social costs. Recognizing that overbreadth invalidation is "strong medicine," a law may be invalidated as overbroad only if

a substantial number of its applications to protected speech are unconstitutional, judged in relation to the statute's plainly legitimate sweep. *United States v. Williams*, 553 U.S. 285, 292-93 (2008); *Hicks*, 539 U.S. at 119-20; *People v. Williams*, 235 Ill. 2d 178, 199-200 (2009).

¶ 25 On appeal, plaintiff makes no argument regarding, and cites no authority to support, his count I claim that the Village's germaneness requirement violated the right to peaceful assembly under the Illinois Constitution and thus has forfeited review of that claim. It is a "well-established principle of appellate review" that "failure to argue an issue in the opening brief waives that issue on appeal." *Fink v. Banks*, 2013 IL App (1st) 122177, ¶ 15; see Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) (the rule prevents the appellant from depriving the appellee of an opportunity to respond to appellant's argument in writing, and failure to cite authority in support of appellate argument waives or forfeits the contention on appeal). Therefore, we will not address plaintiff's claim that the germaneness requirement violated the peaceful assembly provision of the Illinois Constitution.

¶ 26 The Village's ordinance No. 2019-O-077 provides, in pertinent part, as follows.

"The purpose of this policy is to ensure that citizens are allowed time to present their views pertaining to issues concerning the village while permitting the board, committee or commission to conduct their meetings in an effective manner. ***:

*** 

(B) All public comments are limited to six minutes, and each person shall only be permitted to speak once; however, at regular and special village board

meetings, each person shall be allowed to speak once in accordance with this policy, on each agenda item other than consent agenda items that are presented for final adoption. *All public comment at special village board, special commission, or special committee meetings must be germane to items on that particular special meeting* [*sic*]. At the discretion of the Chairperson, the person providing public comment may be allowed to comment further than six minutes or speak more than once. \*\*\*.

\* \* \*

(E) The Chairperson shall preserve order and decorum. Any person who engages in threatening or disorderly behavior when addressing a board, commission, or committee shall be deemed out-of-order by the Chairperson and their time ceased to address the board, commission, or committee at said meeting." (Emphasis added.) Tinley Park Code of Ordinances § 43.01 (approved Dec. 3, 2019) (codifying ordinance No. 2019-O-077).

This court notes that the Village's requirement that public comments be germane to meeting agenda items applies only to special, and not regular, meetings. Thus, residents may talk on any topic during the public comment portion of regular meetings.

¶ 27                                  1. Collateral Estoppel

¶ 28    On September 2, 2021, the United States District Court for the Northern District of Illinois, Eastern Division, in *Eberhardt v. Village of Tinley Park*, No. 1:20-cv-01171 (N.D. Ill. Sept. 2,

2021), dismissed with prejudice plaintiff's claim that the Village's germaneness requirement violated his first amendment free speech rights. In reaching this conclusion, the federal court found that the special Village board meetings were not designated public forums and, thus, the germaneness requirement was subject to the lowest level of scrutiny.

¶ 29 Plaintiff argues that *res judicata* should not apply because that decision never addressed his claim under the Illinois Constitution. Plaintiff also argues that the application of *res judicata* would be fundamentally unfair because the federal court's finding was based on the court's erroneous conclusion that municipal council meetings like the Village board's meetings were not designated public forums. Plaintiff asserts that the special Village board meetings at issue are designated public forums subject to the strict scrutiny standard.

¶ 30 Under Illinois law, collateral estoppel generally applies when

"(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom the estoppel is asserted was a party or in privity with a party to the prior adjudication." *Bajwa*, 208 Ill. 2d at 433.

Per Illinois law, in addition to the foregoing requirements, the party against whom collateral estoppel is asserted must have had an effective and fair opportunity to litigate the issue in the prior proceedings. *Chas. Ind Co. v. Cecil B. Wood, Inc.*, 56 Ill. App. 2d 30, 36-37 (1965). To that end, Illinois courts have noted that "while the purpose of the doctrine is to prevent a party from litigating the same issue twice, it should not be used to preclude a party from litigating the matter at all."

*Gay v. Open Kitchens, Inc.*, 100 Ill. App. 3d 968, 972 (1981). Further, it must not be an injustice to apply the doctrine. *Fred Olson Motor Service v. Container Corp. of America*, 81 Ill. App. 3d 825, 830 (1980). In determining whether an issue has been raised and considered in a prior proceeding for collateral estoppel purposes, pleadings, testimony, jury instructions, findings, verdicts, and any other pertinent sources of information sensibly helpful to the inquiry may be examined. *Chas. Ind Co.*, 56 Ill. App. 2d at 37-38.

¶ 31    We find that all the foregoing criteria are satisfied in this case. Our review of the ruling in *Eberhardt*, No. 1:20-cv-01171, makes clear that plaintiff has already unsuccessfully presented to another court the arguments that the special Village board meetings in question were designated public forums and the constitutionality of the Village's germaneness requirement was subject to strict scrutiny. Those issues were already adjudicated in 2021 in *Eberhardt*, and may not be litigated again in this case. Furthermore, it cannot be said that the application of collateral estoppel against plaintiff is unjust when he had an ample and robust opportunity to litigate the issue in his first amendment claim in *Eberhardt*, No. 1:20-cv-01171. Accordingly, we summarize the law on this issue and the federal court's written analysis in *Eberhardt* because they are relevant to our consideration of plaintiff's claims under the Illinois Constitution.

¶ 32                           2. First Amendment Forum-Based Approach

¶ 33    "[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981). Rather, it is permissible that some

expression be subject to "reasonable time, place, and manner restrictions." *Id.* Such restrictions have been upheld "provided that they are justified without reference to the content of the regulated speech, that they serve a significant governmental interest, and that in doing so they leave open ample alternative channels for communication of the information." *Id.* at 647-48.

¶ 34    Moreover, it is "well settled that the government need not permit all forms of speech on property that it owns and controls." *International Society for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992). A forum-based approach is used "for assessing restrictions that the government seeks to place on the use of its property." *Id.* Traditionally, the United States Supreme Court has recognized "three types of government-controlled spaces: traditional public forums, designated public forums, and nonpublic forums." *Minnesota Voters Alliance v. Mansky*, 585 U.S. 1, 11 (2018).

"In a traditional public forum—parks, streets, sidewalks, and the like—the government may impose reasonable time, place, and manner restrictions on private speech, but restrictions based on content must satisfy strict scrutiny, and those based on viewpoint are prohibited. [Citation.] The same standards apply in designated public forums—spaces that have not traditionally been regarded as a public forum but which the government has intentionally opened up for that purpose. [Citation.] In a nonpublic forum, on the other hand—a space that is not by tradition or designation a forum for public communication— the government has much more flexibility to craft rules limiting speech. [Citation.] The government may reserve such a forum for its intended purposes, communicative or

otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view. [Citation.]

[The Supreme] Court employs a distinct standard of review to assess speech restrictions in nonpublic forums because the government, no less than a private owner of property, retains the power to preserve the property under its control for the use to which it is lawfully dedicated. [Citation.] Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities. [Citation.] Accordingly, [Supreme Court] decisions have long recognized that the government may impose some content-based restrictions on speech in nonpublic forums, including restrictions that exclude political advocates and forms of political advocacy." (Internal quotation marks omitted). *Id.* at 11-12.

¶ 35    Examples of nonpublic forums include the interior of a building used as a polling place (*id.* at 12), an airport terminal (*Lee*, 505 U.S. at 678-79), the sidewalk leading from a post office's parking lot to its front door (*United States v. Kokinda*, 497 U.S. 720, 726-27 (1990) (plurality opinion)), a charity drive aimed at federal employees (*Cornelius v. NAACP Legal Defense & Educational Fund, Inc.*, 473 U.S. 788, 805 (1985)), a public school's interschool mail system and teacher mail boxes (*Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45-46

(1983)), a military base (*Greer v. Spock*, 424 U.S. 828, 838 n.10 (1976)), and advertising on a city transit system (*Lehman v. City of Shaker Heights*, 418 U.S. 298, 302-03 (1974) (plurality opinion)).

¶ 36    The Seventh Circuit in *DeBoer v. Village of Oak Park*, 267 F.3d 558 (7th Cir. 2001), noted that

> "in recent cases, the Supreme Court has employed the term limited public forum to refer to a forum that the state has reserved for certain groups or for the discussion of certain topics; the Court has stated that, in such forums, any restriction must be viewpoint-neutral and reasonable in light of the purpose served by the forum." (Internal quotation marks omitted.) *Id.* at 566 (citing *Good News Club v. Milford Central School*, 533 U.S. 98, 106-07 (2001) (where the Court, based on the parties' agreement, considered school facilities open for a wide, but not unlimited, range of expressive activity to be a limited public forum) and *Rosenberger v. Rector & Visitors of University of Virginia*, 515 U.S. 819, 829 (1995) (which described the activities fund open to various student groups as a limited forum)).

*DeBoer* stated that the Court's "use of this terminology in this context has introduced some analytical ambiguity because the Court previously had employed the term 'limited public forum' as a subcategory of the designated public forum, subject to the strict scrutiny governing restrictions to designated public forums." *Id.*

¶ 37    Generally, courts have treated the public comment portion of municipal council meetings where any member of the public may talk *on any subject* as a designated public forum, which is subject to strict scrutiny. See, *e.g.*, *City of Madison Joint School District No. 8 v. Wisconsin*

*Employment Relations Comm'n*, 429 U.S. 167, 176 (1976) ("when the board sits in public meetings to conduct public business and hear the views of citizens, it may not be required to discriminate between speakers on the basis of *** their speech"); *Surita v. Hyde*, 665 F.3d 860, 869 (7th Cir. 2011) (involving a city council meeting where any member of the public could talk on any subject during the audience time); *Mesa v. White*, 197 F.3d 1041, 1044 (10th Cir. 1999) (noting a lack of dispute regarding whether the public comment period of a county commission meeting was a designated public forum); *Collinson v. Gott*, 895 F.2d 994, 1000 (4th Cir. 1990) (*per curiam*) (Phillips, J., concurring) ("Speech at public meetings called by government officials for discussion of matters of public concern is entitled to normal first amendment protections against general restrictions or *ad hoc* parliamentary rulings by presiding officials."); *Musso v. Hourigan*, 836 F.2d 736, 742 (2nd Cir. 1988) (noting that an open school board meeting is a place where public speech is usually allowed); *cf. Arkansas Educational Television Comm'n v. Forbes*, 523 U.S. 666, 680 (1998) (contrasting a nonpublic forum candidate debate with "an open-microphone format").

¶ 38     The instant case, however, involves a forum where the public comment portion of the special Village board meeting is limited to members of the public talking about matters *listed on the meeting's agenda*. Regarding agenda items, public bodies do not violate the first amendment when they "confine their meetings to specified subject matter." *City of Madison Joint School District No. 8*, 429 U.S. at 175 n.8; see *Cornelius*, 473 U.S. at 802 (public forum may be created by government designating "place or channel of communication *** for the discussion *of certain subjects*" (emphasis added)). "While a speaker may not be stopped from speaking because the

moderator disagrees with the viewpoint he is expressing, see [*Perry Education Ass'n*, 460 U.S. at 60-61 (Brennan, J., dissenting, joined by Marshall, Powell, and Stevens, JJ.)], it certainly may stop him if his *speech becomes irrelevant* or repetitious." (Emphasis added.) *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990) ("the [c]ouncil does not violate the first amendment when it restricts public speakers to the subject at hand").

¶ 39    Some courts have designated this type of forum, where the public comment is confined to agenda items, as a limited public forum, which is subject to the same scrutiny as nonpublic forums, *i.e.*, reasonableness and viewpoint neutrality. See *Reza v. Pearce*, 806 F.3d 497, 502-03 (9th Cir. 2015) (stating that city council meetings are dedicated solely to the discussion of certain topics and, therefore, are a limited public forum); *Rowe v. City of Cocoa*, 358 F.3d 800, 803 (11th Cir. 2004) (*per curiam*) ("As a limited public forum, a city council meeting is not open for endless public commentary speech but instead is simply a limited platform to discuss the topic at hand."); *Hotel Employees & Restaurant Employees Union, Local 100 v. City of New York Department of Parks & Recreation*, 311 F.3d 534, 545, 553 (2nd Cir. 2002) (a limited public forum exists " 'where the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects,' " (quoting *New York Magazine v. Metropolitan Transportation Authority*, 136 F.3d 123, 128 n.2 (2nd Cir. 1998)) and a designated public forum is defined as "a non-public forum that the government has opened for all types of expressive activity"); *Travis v. Owego-Apalachin School District*, 927 F.2d 688, 692 (2nd Cir. 1991) (referring to the "limited public forum" as a subcategory of the designated public forum, where the government "opens a nonpublic forum but limits the expressive activity to certain kinds

of speakers or to the discussion of certain subjects"); *White*, 900 F.2d at 1425 ("City Council meetings *** where the public is afforded the opportunity to address the Council, are the focus of highly important individual and governmental interests." "[S]uch meetings, once opened, have been regarded as public forums, albeit limited ones."); *Deeper Life Christian Fellowship, Inc. v. Board of Education of City of New York*, 852 F.2d 676, 679-80 (2nd Cir. 1988) ("[u]nder the limited public forum analysis, property remains a nonpublic forum as to all unspecified uses [citations], and exclusion of uses—even if based upon subject matter or the speaker's identity—need only be reasonable and viewpoint-neutral to pass constitutional muster" (citing *Cornelius*, 473 U.S. at 802, 806, and *Perry Education Ass'n*, 460 U.S. at 48)).

¶ 40    In *I.A. Rana Enterprises, Inc. v. City of Aurora*, 630 F. Supp. 2d 912, 919, 924 (N.D. Ill. 2009), the court categorized a council meeting where public comments were subject to a relevancy requirement as a designated public forum but upheld its content-based relevancy restriction not under the strict scrutiny standard applicable to designated public forums but, rather, under the standard applicable to nonpublic forums, *i.e.*, reasonable in light of the purpose served by the forum and viewpoint neutral. However, in *Eberhardt*, No. 1:20-cv-01171, the federal district court disagreed with *I.A. Rana Enterprises, Inc.*'s categorization of the forum, but agreed with the level of scrutiny applied and the result. Specifically, the court in *Eberhardt* designated the forum subject to the Village's germaneness requirement as a nonpublic forum and thus subject to the requirements of reasonableness and viewpoint neutrality.

¶ 41    In *Illinois Dunesland Preservation Society v. Illinois Department of Natural Resources*, 584 F.3d 719 (7th Cir. 2009), a nonprofit organization alleged the defendants violated the organization's free speech rights by refusing to display in display racks in the park the organization's pamphlet about avoiding asbestos contamination. The district court granted summary judgment in favor of the defendants, ruling that the display racks were not a public forum but instead were " 'a mini-library of resources for the public.' " *Id.* at 721, 724. The Seventh Circuit, noting that the forum analysis does not apply to libraries, affirmed the lower court's award of summary of judgment in favor of the defendants. *Id.* at 724, 726. In so ruling, the Seventh Circuit stated that the lawyers, in framing their arguments in language taken from Supreme Court opinions, "have treated [the court] to a barrage of unhelpful First Amendment jargon." *Id.* at 722. Regarding the Supreme Court's forum-based analysis, the Seventh Circuit stated that it is difficult to see what difference there is between the fora restrictions and the decision a government actor (like a director of a state theater) must make among the groups (theater groups) clamoring for access to a particular forum (the stage). *Id.* at 724. The Seventh Circuit added that "it is rather difficult to see what work 'forum analysis' in general does." *Id.*

> "It is obvious both that every public site of private expression has to be regulated to some extent and that the character of permitted regulation will vary with the differences among the different types of site. *** The constant (applicable even to nonpublic forums [citation]) is that regulation is not to be used as a weapon to stifle speech." *Id.*

¶ 42 Regardless of any discrepancies among the federal courts regarding the designation of council meetings that limit public comment to agenda items, we conclude, consistent with *City of Madison Joint School District No. 8* and *Cornelius*, that such meetings are subject to the scrutiny standard of reasonableness and viewpoint neutrality because public bodies do not violate the first amendment when they "confine their meetings to specified subject matter." *City of Madison Joint School District No. 8*, 429 U.S. at 175 n.8. With respect to viewpoint neutrality, the government may exclude a speaker

> "if he wishes to address a topic not encompassed within the purpose of a forum [citation], or if he is not a member of the class of speakers for whose especial benefit the forum was created [citation], [but] government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject." *Cornelius*, 473 U.S. at 806.

"Government discrimination among viewpoints—or the regulation of speech based on 'the specific motivating ideology or the opinion or perspective of the speaker'—is a 'more blatant' and 'egregious form of content discrimination.' " *Reed v. Town of Gilbert*, 576 U.S. 155, 168-69 (2015) (quoting *Rosenberger*, 515 U.S. at 829).

¶ 43 As discussed below, the federal court's decision in *Eberhardt*, No. 1:20-cv-01171, is consistent with our conclusion that relevancy restrictions on council meetings are subject to reasonableness and viewpoint neutrality scrutiny.

¶ 44                    3. First Amendment Ruling in *Eberhardt*, No. 1:20-cv-01171

¶ 45    According to the federal court's written order, the court categorized the special Village board meetings as a nonpublic forum and ruled that the Village could reserve its special meetings for the intended purpose of discussing certain subjects as long as the regulation on speech was reasonable and not an effort to suppress expression merely because public officials opposed the speaker's view. The court found that the Village's germaneness requirement for the special Village board meetings was content based. Unlike traditional and designated public forums, where content-based restrictions on speech by the government must satisfy strict scrutiny—they must be narrowly tailored to serve compelling state interests, the special Village board meetings were nonpublic forums because they occurred on government controlled property set aside for the purpose of conducting certain specified business of the Village. As nonpublic forums, the special Village board meetings, which had content-based relevancy restrictions, need only satisfy the standard of reasonable in light of the purpose served by the forum and viewpoint neutrality.

¶ 46    The federal court found that the Village and its board have a significant government interest in ensuring that the public comment period of its special Village board meetings proceeded in an orderly and efficient manner. Moreover, the Village's regulation of the public comment portion of its regular board meetings, where members of the public could address the board on any topic, left open plenty of ways for Village residents like plaintiff to communicate.

¶ 47    Regarding the requirement of section 2.06(g) of the Open Meetings Act (5 ILCS 120/2.06(g) (West 2020)), (*i.e.*, that members of the public have an opportunity to address public officials like the Village board), the federal court stated that, as a constitutional matter, there was

no right of public participation at government proceedings like the special Village board meetings. Moreover, section 2.06(g) did not transform the public comment portion of the special Village board meetings from a nonpublic forum to a designated public forum because, even though the Open Meetings Act required the Village to allow individuals to address Village officials, the Village may nevertheless impose rules for doing so under that statute. The federal court also cited the opinions of the Illinois Attorney General, which concluded that a municipality's restrictions on the right to address public officials under section 2.06(g) of the Open Meetings Act must only be reasonably necessary to further a significant government interest. See 2019 Ill. Att'y Gen. Pub. Access Op. No. 19-002, at 5, https://illinoisattorneygeneral.gov/Page-Attachments/FOIAPAC/2019-Binding-PAC-Opinions/19-002.pdf [https://perma.cc/9QX4-M8AQ]; 2014 Ill. Att'y Gen. Pub. Access Op. No. 14-012, at 5-7, https://illinoisattorneygeneral.gov/Page-Attachments/FOIAPAC/2014-Binding-PAC-Opinions/14-012.pdf [https://perma.cc/75JQ-YCAP].

¶ 48    In light of the purpose of special Village board meetings, the federal court held that the Village's germaneness requirement for public comment at special board meetings was reasonable under the United States Constitution because, consistent with the conclusion assumed by courts for decades as stated in *City of Madison Joint School District No. 8*, 429 U.S. at 175 n.8, "[p]lainly, public bodies may confine their meetings to specified subject matter." The court concluded that plaintiff's first amendment claim based on the Village's germaneness requirement was dismissed with prejudice for failure to state a plausible claim for relief.

¶ 49    Our review of federal law, as discussed above, establishes that the federal court's conclusion is *Eberhardt*, No.1:20-cv-01171, is consistent with other federal courts that have addressed similar claims.

¶ 50                              4. The Illinois Constitution

¶ 51    The freedom of speech provision of the Illinois Constitution guarantees that "[a]ll persons may speak, write and publish freely, being responsible for the abuse of that liberty." Ill. Const. 1970, art. I, § 4.

> "The relationship between article I, section 4, of the Illinois Constitution and the first amendment of the United States Constitution was discussed by [the supreme court] in *People v. DiGuida*, 152 Ill. 2d 104 (1992). After reviewing the history of the provision and the discussion of its terms at the 1970 Constitutional Convention, [the supreme court] concluded that the framers recognized that the Illinois Constitution may provide greater protection to free speech than does its federal counterpart. [*Id.*] at 121. [The supreme court] therefore rejected 'any contention that free speech rights under the Illinois Constitution are in all circumstances limited to those afforded by the Federal Constitution.' [*Id.*] at 122. ***

> [However, that the freedom of speech provision of the Illinois Constitution] may afford greater protection than the first amendment in some circumstances does not mean that greater protection is afforded in every context." *City of Chicago v. Pooh Bah Enterprises, Inc.*, 224 Ill. 2d 390, 446-47 (2006).

¶ 52   In assessing plaintiff's claim that the Village's relevancy requirement for special Village board meetings violates the free speech provision of the Illinois Constitution, we have looked for other jurisdictions applying state constitutional provisions that are similar to article I, section 4, of the Illinois Constitution and whether those jurisdictions likewise held that their state constitutions provide no greater protection to speech at council meetings confined to certain subjects than is conferred by the first amendment.

¶ 53   In *Barron v. Kolenda*, 203 N.E.3d 1125, 1133, 1136 (Mass. 2023), the Massachusetts Supreme Judicial Court addressed whether a town's public comment civility code—which provided that "[a]ll remarks and dialogue in public meetings must be respectful and courteous, free of rude, personal, or slanderous remarks. Inappropriate language and/or shouting will not be tolerated." (internal quotation marks omitted)—violated, *inter alia*, the free speech provision of article 16 of the Massachusetts Declaration of Rights, as amended in 1948 by article 77 of the Articles of Amendments to the Massachusetts Constitution.[6] Mass. Const. pt. 1, art. XVI (as amended by  Mass. Const. Arts. of Amend., art. LXXVII). In reaching its conclusion that the town's civility code violated its state constitution, the court stated that it need not survey the contested federal case law distinguishing limited and designated public forums and the different standards of review applicable to those forums under the first amendment. *Barron*, 203 N.E.3d at 1137. The court did not need to decide whether it would find the Supreme Court's public,

---

[6]Article XVI of the Massachusetts Declaration of Rights provides, in relevant part, that "[t]he right of free speech shall not be abridged." Mass. Const. pt. 1, art. XVI (as amended by Mass. Const. Arts. of Amend., art. LXXVII).

nonpublic, and limited public forum classifications instructive in resolving free speech rights under its own constitution because, under Massachusetts's constitution, the appliable standard for content-based restrictions on political speech is clearly strict scrutiny. *Id.* at 1138 & n.12 (noting that "the protection provided by the [Massachusetts] Constitution is at least as great if not greater than the protection provided by the First Amendment for content-based governmental restrictions").

¶ 54    The court, however, acknowledged that its case did not involve meetings where the public's comments were limited to particular agenda items. *Id.* at 1137 n.10, 1138 n.12. The court recognized "that even though a public meeting limited to a particular purpose may require a content-based restriction on comments, government must be able to hold such meetings to function efficiently." *Id.* at 1138 n.12. Also, the court did not decide what standard of scrutiny applied to such meetings. *Id.*

¶ 55    Consistent with the persuasive constitutional analysis, as set forth above, of the federal courts that have addressed the constitutionality under the first amendment of relevancy requirements on public comment at municipal meetings and concluded that such requirements are subject to the reasonableness and viewpoint neutrality standard of scrutiny, we find no basis for concluding that article I, section 4, of the Illinois Constitution affords greater protection to public speech at municipal meetings limited to agenda items than is provided by the federal constitution.

¶ 56    We also find that the Village's germaneness requirement, even though it is content based,[7] satisfies reasonableness and viewpoint neutrality scrutiny. In light of the purpose of special Village board meetings to effectively conduct business on specified matters and ensure that citizens are allowed time to present their views on matters pertaining to issues concerning the Village, the Village's germaneness requirement is reasonable under the Illinois Constitution because, consistent with the conclusion assumed by courts for decades, "[p]lainly, public bodies may confine their meetings to specified subject matter." *City of Madison Joint School District No. 8*, 429 U.S. at 175 n.8. (recognizing the significance of the government's interest in conducting orderly, efficient meetings of public bodies). Furthermore, the germaneness requirement is viewpoint neutral. The circumstances of this case are that plaintiff wishes to discuss non-agenda topics such as bribery, corruption, and campaign contributions at special Village board meetings that have a specific agenda. Even though the germaneness requirement would prohibit plaintiff's comments on non-agenda items, it is a blanket prohibition. The germaneness requirement does not selectively prohibit or suppress speech as concerns any singular viewpoint or message or individual speaker but, rather, simply bars discussion of non-agenda items across the board. See, *e.g.*, *Weinberg v. Village of Clayton*, 537 F. Supp. 3d 344, 364 (N.D.N.Y. 2021) (holding that rules prohibiting public comment about matters under current litigation at municipal board meetings were permissible restrictions of speech under the first amendment). Also, members of the public may address the Village board on any topic at regular Village board meetings.

---

[7]"Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 576 U.S. at 163.

¶ 57 The Village's germaneness requirement at special Village board meetings makes content-based exclusions of speech that does not fall within the category of uses to which the forum has been opened, and those exclusions satisfy the viewpoint-neutral and reasonableness criteria. Thus, count I of plaintiff's second amended complaint—that Village ordinance No. 2019-O-077 is invalid under article I, section 4, of the Illinois Constitution—fails to state a cause of action for which relief can be granted. Therefore, pursuant to section 2-615 of the Code, the trial court properly dismissed count I with prejudice.

¶ 58                               5. The Open Meetings Act

¶ 59 Plaintiff contends that free speech rights should be construed more broadly under the Illinois Constitution than under the United States Constitution because the purposes and legislative intent of the Open Meetings Act (5 ILCS 120/1 *et seq.* (West 2020)), as well as FOIA (5 ILCS 140/1 *et seq.* (West 2020)), "and the interplay of the statutory mandates contained therein *** support the exercise of bedrock Constitutional rights under both the federal and State Constitutions." Plaintiff, however, cites no relevant legal authority to support this contention.

¶ 60 "[A] reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research." (Internal quotation marks omitted.) *Gandy v. Kimbrough*, 406 Ill. App. 3d 867, 875 (2010). Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires a clear statement of contentions with citation of the authorities relied on. This rule is not merely a suggestion, but is necessary for the proper and

efficient administration of the courts. *First National Bank of Marengo v. Loffelmacher*, 236 Ill. App. 3d 690, 691-92 (1992). We will not complete legal research to find support for this issue. Issues that are ill-defined and insufficiently presented do not satisfy the rule and are considered forfeited. *Express Valet, Inc. v. City of Chicago*, 373 Ill. App. 3d 838, 855 (2007).

¶ 61     Forfeiture notwithstanding, section 2.06(g) of the Open Meetings Act (5 ILCS 120/2.06(g) (West 2020)) provides that "[a]ny person shall be permitted an opportunity to address public officials *under the rules established and recorded by the public body*." (Emphasis added.) Section 2.06(g) inherently recognizes that there can be rules, and it does not confer a right on plaintiff to be able to speak at all meetings about all subjects.

¶ 62     Even if we assumed that the Village's germaneness requirement violated section 2.06(g), the Open Meetings Act does not define the scope of the free speech right under the Illinois Constitution, and a violation of that statute would not itself establish that the Village's germaneness requirement also deprived plaintiff of his free speech rights under the Illinois Constitution. See, *e.g.*, *Davis v. Scherer*, 468 U.S. 183, 194-96 (1984) (rejecting the contention that a violation of a related state statute or regulation necessarily renders the state actor's actions unreasonable for purposes of determining qualified immunity). The right afforded under section 2.06(g) simply establishes that the Village must allow public comments at board meetings to some extent. Consistent with section 2.06(g), the Village's germaneness requirement allows public comment on agenda items at special Village board meetings and public comment on any topic at

regular Village board meetings. As discussed above, the Village's germaneness requirement does not violate plaintiff's free speech rights.

¶ 63                              B. Section 1983 Claim

¶ 64    Plaintiff, in count II of his second amended complaint, alleged that defendants, without authority but acting under color of law, filed with the ARDC a request for an investigation against him, which contained intentional and knowing false facts and misrepresentations. According to plaintiff, this investigation request was intended to harass him, retaliate against him for filing *Eberhardt*, No. 1:20-cv-01171, in federal court, and interfere with and suppress his freedom of speech, which was critical of defendants' conduct or fitness for office. Plaintiff sought damages against all the individual defendants under the guarantees of the Civil Rights Act (42 U.S.C. § 1983 (2018)) for alleged violations of his free speech rights under the first amendment and due process and equal protection rights under the fourteenth amendment of the United States Constitution based on defendants' ARDC investigation request.

¶ 65    Initially, we note that plaintiff makes no argument regarding, and cites no authority to support, his claims of due process and equal protection violations and thus has forfeited review of those claims. See *Fink*, 2013 IL App (1st) 122177, ¶ 15; Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). We also note that plaintiff filed his second amended complaint against the Village defendants in their individual capacities and not their official capacities as Village officials and employees. As the Supreme Court explained in *Kentucky v. Graham*, 473 U.S. 159 (1985), "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color

- 32 -

of state law. [Citation.] Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which [a government official] is an agent.' " *Id.* at 165 (quoting *Monell v. Department of Social Services of New York*, 436 U.S. 658, 690 n.55 (1978)); see *Doe v. Calumet City*, 161 Ill. 2d 374, 400 (1994), *overruled on other grounds by DeSmet v. County of Rock Island*, 219 Ill. 2d 497 (2006) (distinguishing between personal and official capacity suits). This distinction is important because different requirements exist for establishing personal and municipal liability in a suit brought under section 1983. In order to establish personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." (Internal quotation marks omitted.) *Doe*, 161 Ill. 2d at 401. Municipal liability, on the other hand, requires the plaintiff to make an additional "showing that the underlying deprivation resulted from a municipal policy or custom." *Id.*

¶ 66   "Section 1983 establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws' by any person acting 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.' " *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 514 (1991) (quoting 42 U.S.C. § 1983 (1982)); see *Stahl v. Village of Hoffman Estates*, 296 Ill. App. 3d 550, 558 (1998). "Two allegations must be made to state a claim under that provision." *Fellhauer*, 142 Ill. 2d at 514. " 'First, the plaintiff must allege that some person has deprived him of a federal right. Second, [plaintiff] must allege that the person who has deprived him of that right acted under color of state or territorial law.' " *Id.* (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). The purpose of section 1983 is "to 'deter state actors from

using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.' " *Estate of Strocchia v. City of Chicago*, 284 Ill. App. 3d 891, 902 (1996) (quoting *Wyatt v. Cole*, 504 U.S. 158, 161 (1992)).

¶ 67    As an initial matter, defendants argue that the trial court properly dismissed plaintiff's section 1983 claim under section 2-619 of the Code because Illinois Supreme Court Rule 775 (eff. Dec. 7, 2011) grants them absolute immunity from any civil liability relative to claims arising out of their submission of a request for investigation to the ARDC. Rule 775 provides:

> "Any person who submits a claim to the Client Protection Program or who communicates a complaint concerning an attorney or allegations regarding the unauthorized practice of law to the [ARDC], or its administrators, staff, investigators or any member of its boards, shall be immune from all civil liability which, except for this rule, might result from such communications or complaint. The grant of immunity provided by this rule shall apply only to those communications made by such persons to the [ARDC], its administrators, staff, investigators and members of its boards." *Id.*

Defendants argue that Rule 775 assures that individuals are in no way discouraged from lodging complaints with the ARDC where attorneys are concerned, and plaintiff is an attorney.

¶ 68    Illinois courts have recognized that persons making reports to the ARDC enjoy absolute immunity from state law tort liability. *Lykowski v. Bergman*, 299 Ill. App. 3d 157, 165 (1998) (involving a defamation claim). However, the same immunity does not apply to alleged federal

civil rights violations. As the Supreme Court explained in *Martinez v. California*, 444 U.S. 277 (1980):

> " 'Conduct by persons acting under color of state law which is wrongful under 42 U.S.C.§ 1983 or § 1985(3) cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced.' " *Id.* at 284 n.8 (quoting *Hampton v. City of Chicago*, 484 F.2d 602, 607 (7th Cir. 1973).

See *Howlett ex rel. Howlett v. Rose*, 496 U.S. 356, 375 (1990) ("The elements of, and the defenses to, a federal cause of action are defined by federal law."); *Tiemann v. Tul-Center, Inc.*, 18 F.3d 851, 853 (10th Cir. 1994) (holding that the Oklahoma Governmental Tort Claims Act (Okla. Stat. Ann. tit. 51, §§ 151-171. (1988 & Supp. 1994)) did not immunize the defendants from liability under 42 U.S.C. § 1983). Thus, defendants cannot rely on Rule 775 to support dismissal pursuant to section 2-619 of the Code of plaintiff's section 1983 claim.

¶ 69    Count II of plaintiff's second amended complaint is a first amendment retaliation claim. To that end, the second amended complaint reads, in pertinent part:

> "74. On February 8, 2020, Plaintiff filed the original Complaint in the United States District Court naming Defendant Glotz, Defendant Walsh and others seeking redress for violations of Plaintiff's Constitutional rights.

75. In retaliation for the filing of the same, on April 15, 2020, Defendant Niemeyer submitted a Request for Investigation.

76. Plaintiff submitted a Response to the 'Request for investigation' on May 13, 2020.

77. Defendant Carr submitted a reply on June 4, 2020.

78. The Request for Investigation contained purposefully false and misleading statements and false statements of fact.

\*\*\*

80. Defendant Walsh intended that the true authorship of the document be secreted because Walsh was aware of the false and misleading statements he had made therein.

81. It was clear to Plaintiff that Defendant Walsh had been the primary author of the Request for Investigation.

\* \* \*

86. Defendant Niemeyer intentionally disregarded the limits of his lawful authority to support Defendant Glotz's and Defendant Walsh's plan to retaliate personally and professionally against Plaintiff in violation of statutory and Constitutional guarantees.

\* \* \*

90. Defendants Glotz and Walsh had conferred and drafted the Request for Investigation meant to be a one and done to accomplish the goal of ending Plaintiff's FOIA requests as well as FOIA Requests for Review being sent to the Illinois Attorney General

Public Access Counselor and the FOIA litigation ***, as well as litigation that had been filed against the Village *** all targeted to and that did violate Plaintiff's Constitutional rights.

\* \* \*

95. Thereafter, on May 28, 2021, Defendant Carr submitted additional information with regard to the Request for Investigation that contained purposeful misrepresentations and incomplete presentations of fact all intended to further intimidate and prejudice Plaintiff as well as further retaliate against Plaintiff for his exercise of statutory and Constitutional rights." (Internal quotation marks omitted.)

¶ 70    To bring a first amendment retaliation claim, plaintiff must allege that

"(1) [he] engaged in constitutionally protected activity; (2) the defendant[s'] actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant[s'] conduct—*i.e.*, that there was a nexus between the defendant[s'] actions and an intent to chill speech." *Arizona Students' Ass'n v. Arizona Board of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (quoting *O'Brien v. Welty*, 818 F.3d 920, 933 (9th Cir. 2016)).

Plaintiff may make the showing relevant to the third element by relying on direct or circumstantial evidence. *Dempsey v. Johnson*, 2016 IL App (1st) 153377, ¶ 26. "For example, the plaintiff may rely on evidence of temporal proximity between the protected activity and alleged retaliatory conduct to demonstrate that [defendants'] purported reasons for [their] conduct are pretextual or

false." *Id.* Further, to prevail on a retaliation claim, plaintiff need only show that defendants " 'intended to interfere' " with his first amendment rights and that he suffered some injury as a result; plaintiff is not required to demonstrate that his first amendment rights were actually suppressed or inhibited. *Arizona Students' Ass'n*, 824 F.3d at 867 (quoting *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999).

¶ 71    Count II fails from a pleading standpoint in several respects. The second amended complaint contains no allegations of personal involvement with respect to the request for investigation submitted to the ARDC against any defendants other than Niemeyer, Glotz, Carr, and Walsh. Liability under section 1983 requires personal involvement. See *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008). Without factual allegations of personal involvement by Brennan, Thirion, Brady, and Mueller with respect to the complaint to the ARDC, plaintiff has not stated, pursuant to section 2-615 of the Code, a section 1983 claim against them. Accordingly, we affirm, pursuant to section 2-615 of the Code, the trial court's dismissal with prejudice of count II against defendants Brennan, Thirion, Brady, and Mueller.

¶ 72    As to the first element of his first amendment retaliation claim, plaintiff seems to allege that the constitutionally protected activity in which he engaged was the right to access the courts when he filed on February 8, 2020, his federal lawsuit, *Eberhardt*, No. 1:20-cv-01171, against defendants Niemeyer, Glotz, Walsh, and others. (Carr was not a defendant in case No. 1:20-cv-01171.) See *Miskovsky v. Jones*, 437 F. App'x 707, 713 (10th Cir. 2011) (holding that it is a constitutionally protected activity to file pleadings in federal court); *Smith v. Maschner*, 899 F.2d

940, 947 (10th Cir. 1990) (stating that retaliation for exercise of right of access to courts is a constitutional violation).

¶ 73    As to the third element, plaintiff relies on evidence of temporal proximity between the alleged protected activity and retaliatory conduct to establish that the activity was a substantial motivating factor in the conduct of defendants Niemeyer, Glotz, Carr, and Walsh—*i.e.*, that there was a nexus between those defendants' requesting an ARDC investigation of plaintiff and an intent to chill his effort to redress his grievances for alleged violations of his constitutional rights by filing a lawsuit. As circumstantial evidence of those four defendants' retaliatory intent, plaintiff sufficiently alleged that the investigation request was made to the ARDC about two months after plaintiff filed *Eberhardt*, No. 1:20-cv-01171, against defendants Niemeyer, Glotz, Walsh, and others in federal court.

¶ 74    However, defendants argue, and we agree, that plaintiff failed to plead any facts to support the second element of his retaliation claim. As to the second element, in considering whether the conduct of defendants adversely affected plaintiff's first amendment rights, courts evaluate whether the "conduct would likely deter 'a person of ordinary firmness' from the exercise of [his] First Amendment rights." *Constantine v. Rectors & Visitors of George Mason University*, 411 F.3d 474, 500 (4th Cir. 2005). The ordinary-firmness test is an objective test that is "designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment." *Garcia v. City of Trenton*, 348 F.3d 726, 728-29 (8th Cir. 2003). As such, courts have held that retaliatory conduct must have resulted in something more than a "*de minimis*

inconvenience" to the exercise of first amendment rights. *Constantine*, 411 F.3d at 500. " 'Merely encouraging or engaging in action is not an actionable constitutional violation unless it results in some harm to the plaintiff.' " *Weise v. Colorado Springs*, 421 F. Supp. 3d 1019, 1043 (D. Colo. 2019) (quoting *Glover v. Mabrey*, 384 F. App'x 763, 770 (10th Cir. 2010)). Applying the ordinary-firmness test is a "fact intensive" inquiry that focuses on the status of the speaker, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts. *Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000). Reputational injury is generally insufficient, by itself, to satisfy the second element of a first amendment retaliation claim. See *Eaton v. Meneley*, 379 F.3d 949, 956 (10th Cir. 2004).

¶ 75    Here, plaintiff fails to allege facts to support an inference that the request for investigation to the ARDC constituted an adverse action that deterred his first amendment activity. Nowhere in the second amended complaint does he allege that the submission of the request for investigation to the ARDC deterred him from engaging in protected speech. Moreover, the pleadings and exhibits indicate that plaintiff continued to file lawsuits and speak at Village board meetings notwithstanding the request for investigation to the ARDC. Specifically, plaintiff filed a second federal lawsuit in 2020, No. 1:20-cv-03269, against the Village and six of its officials, which the court dismissed without prejudice in October 2020 for failing to state a short and plain statement of his claims. Thereafter, plaintiff filed an amended complaint, which the court dismissed in November 2020, after concluding that it was materially identical to and duplicative of the lawsuit in federal case No. 1:20-cv-01171. *Eberhardt v. Village of Tinley Park*, No. 1:20-cv-03269, 2020

WL 6565226 (N.D. Ill. Nov. 9, 2020). In May 2021, plaintiff filed in the circuit court of Cook County the instant case, No. 21-L-65042, which raised issues previously raised in federal case No. 1:20-cv-01171, including the Village's responses to plaintiff's FOIA requests, the Village limiting the time available for public comment at Village board meetings, claims for violations of plaintiff's constitutional rights, and the unlawful appointment of Walsh's law firm as counsel for the Village. Thereafter, plaintiff amended his complaint in October 2021 and April 2022. Also, in August 2021, plaintiff filed *Eberhardt v. Village of Tinley Park*, No. 21-CH-3867 (Cir. Ct. Cook County), which included claims for alleged FOIA violations, unlawful time restrictions for public comment at Village board meetings, and the appointment of Walsh's law firm as counsel for the Village. Thereafter, plaintiff amended that complaint in September 2021.

¶ 76 Accordingly, we affirm, under section 2-615 of the Code for failure to state a claim, the trial court's dismissal with prejudice of count II of plaintiff's second amended complaint.

¶ 77 C. Appointment of Outside Counsel

¶ 78 Plaintiff alleged, in count III of his second amended complaint, that the Village and certain defendants, without authority, appointed defendant Walsh to represent the Village and its officials or employees as their attorney and obligated the taxpayers to pay for defendants' personal and professional attacks on plaintiff and not for any proper purpose of the Village. Plaintiff sought declaratory and injunctive relief against the Village, Glotz, Thirion, Brady, Brennan, Mueller, and Walsh for their alleged unlawful appointment of Walsh as their attorney. Plaintiff also sought an order for Walsh to reimburse the Village for any taxpayer funds paid to him or his law firm.

¶ 79    The Village defendants and Walsh argue that the trial court properly dismissed, pursuant to section 2-619 of the Code, count III with prejudice because (1) plaintiff lacked taxpayer standing to assert the claim and (2) the Village's appointment of the Walsh Law Group, P.C., was lawful. We agree.

¶ 80                              1. Standing

¶ 81    The doctrine of standing allows courts to "preserve for consideration only those disputes which are truly adversarial and capable of resolution by judicial decision." *Martini v. Netsch*, 272 Ill. App. 3d 693, 695 (1995). Standing consists of an "injury in fact to a legally recognized interest." *Id.* The injury must be (1) "distinct and palpable," (2) "fairly traceable to the defendant's actions," and (3) "substantially likely to be prevented or redressed by the grant of the requested relief." *Id.* Under Illinois law, the defendant has the burden to both plead and prove the plaintiff's lack of standing. *Chicago Teachers Union, Local 1 v. Board of Education of Chicago*, 189 Ill. 2d 200, 206 (2000).

> "The key to taxpayer standing is the plaintiff's liability to replenish public revenues depleted by an allegedly unlawful governmental action. Such taxpayers have a legally cognizable interest in their tax liability, their increased tax liability is a specific injury, and their injury is redressable by an injunction against the challenged governmental expenditure of tax funds." *Barber v. City of Springfield*, 406 Ill. App. 3d 1099, 1102 (2011).

"A plaintiff whose claims rest on his or her standing as a taxpayer must allege such equitable ownership of funds depleted by misappropriation and his or her liability to replenish them in the

complaint; otherwise, the complaint is 'fatally defective.' " *Id.* (quoting *Golden v. City of Flora*, 408 Ill. 129, 131 (1951)).

¶ 82     Even assuming that the second amended complaint alleged a "distinct and palpable" injury, the second amended complaint did not allege that any injury is "fairly traceable" to Walsh. It cannot reasonably be disputed that Walsh's law firm was appointed as outside counsel for the Village, and he was not an officer of the Village as defined and codified in sections 8-1-7 and 3.1-30-5(a)(5) of the Illinois Municipal Code (65 ILCS 5/3.1-30-5(a)(5), 8-1-7 (West 2020)). See *Thurman v. Department of Public Aid*, 25 Ill. App. 3d 367, 370 (1974) ("statutes are a matter of public knowledge, and when one comes to the attention of the court, it must take judicial notice of same"). As outside counsel, Walsh did not have the means to commit the acts complained of, such as setting meeting times or responding to FOIA requests. Plaintiff complained at length about the alleged procedures used by the Village to appoint Walsh. However, Walsh was not vested with the statutory authority to appoint his firm as outside counsel for the Village or to adopt procedures employed by the Village for purposes of appointing outside counsel. The second amended complaint alleged that Walsh "consulted and counseled" Mayor Glotz on his appointment, but that allegation, standing alone does not constitute a distinct and palpable injury attributable to Walsh. Accordingly, we conclude that the second amended complaint does not contain allegations that could serve as the basis for standing to sue Walsh.

¶ 83     Next, citing public records, defendants argue that plaintiff did not own a home in Tinley Park during the events of which he complains, or possibly ever, and thus was not a "taxpayer" for

purposes of establishing standing. Specifically, plaintiff formerly resided at 7107 177th Place, Tinley Park, Illinois. According to the recorded warranty deed, the property was owned solely by Gloria Villanueva. According to property taxes for tax years 2015-20, Ms. Villanueva was the only individual responsible to pay property taxes on 7107 177th Place. Defendants argue that as the owner of the real property, Ms. Villanueva was liable to "replenish funds depleted" through payment of property taxes. Plaintiff was not. See 35 ILCS 200/9-175 (West 2020) ("The owner of property on January 1 in any year shall be liable for the taxes of that year ***.")

¶ 84    Plaintiff responds that he was a taxpayer because he paid Ms. Villanueva's property taxes, which were based on his senior exemption. Also, as a resident of the Village and self-employed attorney with offices in the Village, he was subject to the telecommunications tax, local home rule sales tax, local motor fuel tax, and state income tax, which were all collected by the State of Illinois and forwarded to the Village for deposit into the general fund. Plaintiff also paid the annual motor vehicle tax and utility bill. Defendants reply, without citation to any relevant authority, that nonpossessory residency does not convey standing. See *Anderson Dundee 53, L.L.C. v. Terzakis*, 363 Ill. App. 3d 145, 160 (2005) (failure to cite any pertinent authority in support of an argument forfeits review of the issue on appeal).

¶ 85    The record indicates that plaintiff filed his initial complaint in this matter in May 2021 and filed his first amended complaint in October 2021. Furthermore, according to public records, plaintiff moved to Clermont, Florida, in or near December 2021 with Ms. Villanueva after she sold her home in Tinley Park. Plaintiff filed the second amended complaint on April 13, 2022. Plaintiff

argues that his taxpayer standing is determined based on his status when he filed his initial complaint in May 2021 and that his actions after that date are irrelevant to the issue of his standing. See *Lee v. Fosdick*, 2014 IL App (4th) 130939, ¶ 16; *Deutsche Bank National Trust Co. v. Iordanov*, 2016 IL App (1st) 152656, ¶ 34.

¶ 86    Defendants argue, however, that plaintiff's amended complaints do not refer to or adopt the prior complaints and that an "amended complaint controls and supersedes earlier complaints where the amended complaint does not refer to or adopt the original complaint." See *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 154 (1983). "Where an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn." *Bowman v. County of Lake*, 29 Ill. 2d 268, 272 (1963).

¶ 87    Putting aside the issue of whether plaintiff was a homeowner or taxpayer liable to replenish funds allegedly depleted in Tinley Park before he moved to Florida, he certainly was not liable to replenish the Tinley Park general fund on April 13, 2022, when he filed the operative complaint in this case. As such, plaintiff was not saddled with the "liability to replenish public revenues depleted by an allegedly unlawful governmental action" and his claims are "fatally defective." See *Barber*, 406 Ill. App. 3d at 1102. Accordingly, we conclude that, consistent with section 2-619 of the Code, the trial court correctly dismissed with prejudice count III of the second amended complaint against the defendants based on the affirmative defense of lack of standing.

¶ 88                            2. The Village's Appointment of Walsh's Law Firm

¶ 89    Even assuming that plaintiff has standing to pursue his count III claim, defendants raise another affirmative defense to support dismissal with prejudice of plaintiff's claim that the appointment of the Walsh Law Group, P.C., as outside counsel in July 2019 was unlawful. Defendants argue the trial court properly dismissed this claim pursuant to section 2-619 of the Code because the pleadings and properly filed exhibits affirmatively establish that the procedures the Village used to appoint the Walsh Law Group, P.C., did not violate any law or ordinance.

¶ 90    Plaintiff responds that the Village's ratification of the Walsh Law Group, P.C.'s appointment violated Illinois law and the Village's ordinances. According to plaintiff, the mayor had to make the original appointment of the Walsh Law Group, P.C., and carry out the ratification of the engagement of that firm with the advice and consent of the Village board. Defendants, however, present affirmative matter that completely refutes plaintiff's allegations.

¶ 91    Village ordinance No. 2017-O-012 (the purchasing ordinance)[8] adopts a purchasing manual for the Village. Tinley Park Ordinance No. 2017-O-012 (approved Mar. 7, 2017). Section 1 of the purchasing manual expressly states that it applies to "purchases and contracts in amounts

---

[8]We reject plaintiff's claim that Walsh did not "properly file" the purchasing ordinance. It was attached to Walsh's motion to dismiss as exhibit No. 5 and constituted an affirmative matter that negated count III of the second amended complaint. *Slay v. Allstate Corp.*, 2018 IL App (1st) 180133, ¶ 44 (" 'An affirmative matter *** is something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint.' " (quoting *Dewan v. Ford Motor Co.*, 363 Ill. App. 3d 365, 368 (2005)). Also, plaintiff makes a vague assertion that the filed copy of the purchasing ordinance was superseded, but he does not allege that any superseding version of the purchasing ordinance altered the Village manager's purchasing authority so as to defeat defendants' argument for dismissal under section 2-619 of the Code.

less than $20,000.00." Section 2 of the purchasing manual ("Authority to Purchase") provides that "[t]he Village Manager is authorized to engage the services of engineers, *attorneys or other professional consultants* for any matter that will create an obligation for such services not exceeding $20,000.00 without prior approval of the Village Board." (Emphasis added.) Furthermore, section 8-1-7(a) of the Illinois Municipal Code provides that the Village's corporate authorities "may authorize heads of departments or other separate agencies of the municipality to make necessary expenditures for the support thereof upon the basis of the appropriations of the preceding fiscal year." 65 ILCS 5/8-1-7(a) (West 2020). Nowhere does plaintiff allege that the Walsh Law Group, P.C., billed the Village more than $20,000 for the firm's services prior to plaintiff initiating this litigation.

¶ 92 Before plaintiff filed his second amended complaint, he was aware of the purchasing ordinance and knew that the Village manager had the authority to appoint the Walsh Law Group, P.C., without board approval. Specifically, plaintiff had made the same unlawful appointment allegations against defendants in the federal district court in *Eberhardt*, No. 1:20-cv-01171, before that case was dismissed for lack of standing and jurisdiction. Moreover, Walsh had served on plaintiff three separate "safe harbor" notices in compliance with Rule 11 of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 11), informing plaintiff that the purchasing ordinance authorized the Village manager to appoint outside counsel without approval from the Village board of trustees and that each iteration of the complaint lacked merit.[9] Despite clear authorization for the Village

---

[9]According to the federal court's August 18, 2022, order in *Eberhardt v. Village of Tinley Park*, No. 1:20-cv-01171 (N.D. Ill. Aug. 18, 2022), the court sanctioned Eberhardt for violating Rule 11 of the

manager to appoint the Walsh Law Group, P.C., as outside counsel, plaintiff refiled in the instant case the same allegations challenging the firm's appointment.

¶ 93    On appeal, plaintiff asserts that Walsh was appointed as an "officer" of the Village and cites section 3.1-30-5(a)(5) of the Illinois Municipal Code (65 ILCS 5/3.1-30-5(a)(5) (West 2020)) for support. Section 3.1-30-5(a)(5) relates to the appointment of municipal officers. Likewise, section 31.008 of the Village's code of ordinances provides that the Village president, with the advice and consent of the board, appoints "all officers of the village." Tinley Park Code of Ordinances § 31.008(A)(1) (adopted 1977). However, as discussed above, Walsh, as outside counsel, was not an "officer" of the Village. Section 31.115 of the code of ordinances, which was adopted in 1977, permits the Village president to retain an attorney to advise the Village with the advice and consent of the board (Tinley Park Code of Ordinances § 31.115 (adopted 1977)), but the purchasing ordinance notes that "[a]ll Ordinances, or parts of Ordinances in conflict with the provisions of this Ordinance are hereby repealed to the extent of any such conflict" (Tinley Park Ordinance No. 2017-O-012 (approved Mar. 7, 2017)).

¶ 94    The court in *Sampson v. Graves*, 304 Ill. App. 3d 961, 964-65 (1999), distinguished between appointments of "officers" of the Village, such as a chief of police or the village attorney, and those of professional consultants, including attorneys. The court underscored that a mayoral appointment is not required to retain additional, outside legal services. *Id.* To support his claim on

Federal Rules of Civil Procedure and ordered him to pay Walsh $26,951.22 in attorney fees, finding, *inter alia*, that Eberhardt neglected to cite a purchasing ordinance that negated his claims regarding the appointment of the Walsh Law Group, P.C., as outside counsel.

appeal, plaintiff cites *Village of Westmont v. Lenihan*, 301 Ill. App. 3d 1050 (1998), where a board improperly took unilateral action to hire a village attorney. That case, however, is distinguishable from the case at bar because here, in contrast to the village in *Lenihan*, there is no ordinance granting the mayor the sole authority to hire attorneys for the trustees. See *Sampson*, 304 Ill. App. 3d at 967.

¶ 95    Even if the trial court here accepted the notion that board approval was required for the proper appointment of the Walsh Law Group, P.C., dismissal of count III with prejudice was proper because the Village board of trustees ultimately ratified the appointment on May 19, 2020, through Village resolution No. 2020-R-058. The minutes of the May 19, 2020, Village board meeting establish that the Village board of trustees voted to ratify the appointment of the Walsh Law Group, P.C., and retain the firm for additional services. Resolution No. 2020-R-058 ratified the Village's contract with the Walsh Law Group, P.C., and approved expenditures above $20,000, if necessary. Accordingly, even assuming the initial appointment of the Walsh Law Group, P.C., was defective, the Village board's ratification cured any such defect. See *Argo High School Council of Local 571 v. Argo Community High School District 217*, 163 Ill. App. 3d 578 (1987); *Board of Education School District No. 67 v. Sikorski*, 214 Ill. App. 3d 945, 952 (1991) ("However, we further determine that the Board's violation of the Open Meetings Act was [an] inadequate basis to render the sales contract between the parties void *ab initio* and unenforceable, since the Board's decision to reschedule public sale of the Hynes School property was ratified in subsequent

public meetings of the Board."); *Lindsey v. Board of Education of Chicago*, 127 Ill. App. 3d 413 (1984); *Collinsville Community Unit School District No. 10 v. Witte*, 5 Ill. App. 3d 600 (1972).

¶ 96    Plaintiff contends that the board's May 19, 2020, ratification of its engagement of the Walsh Law Group, P.C., was somehow improper. He argues that "Mayor Vandenberg has refused to motion to appoint Mr. Walsh as a Village attorney ***." Putting aside that Walsh has never been a "Village Attorney" as codified by statute, Mayor Vandenberg recused himself from the discussion of resolution No. 2020-R-058, rather than "refused" to act. Mayor Vandenberg's recusal left Trustee Glotz to act as mayor *pro tem* during the meeting and ultimately sign resolution No. 2020-R-058. The ratification of the Village's agreement with the Walsh Law Group, P.C., did not violate any law or ordinance.

¶ 97    We conclude that the trial court properly dismissed with prejudice, under section 2-619 of the Code, count III of plaintiff's second amended complaint.

¶ 98                            III. CONCLUSION

¶ 99    For the foregoing reasons, we affirm the judgment of the circuit court that dismissed plaintiff's second amended complaint with prejudice.

¶ 100   Affirmed.

No. 1-23-0139

---

***Eberhardt v. Village of Tinley Park*, 2024 IL App (1st) 230139**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 21-L-65042; the Hon. Mary Kathleen McHugh, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Stephen E. Eberhardt, of Tinley Park, appellant *pro se*. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Dominick L. Lanzito, of Peterson, Johnson & Murray, LLC, of Chicago, for appellees Village of Tinley Park, Michael W. Glotz, Kristin A. Thirion, William P. Brady, William A. Brennan, Michael G. Mueller, David J. Niemeyer, and Patrick J. Carr Jr. |
| | Patrick M. Griffin, of Griffin Williams McMahon & Walsh, LLP, of Geneva, for other appellee. |

---